415 So.2d 1331 (1982)
Jim SMITH, Attorney General of the State of Florida, the Department of Veterans and Community Affairs, and Transgulf Pipeline Company, Petitioners,
v.
Ben C. WILLIS, As Judge of the Circuit Court of the Second Judicial Circuit in and for Gadsden County, Florida; and Board of County Commissioners of Gadsden County, Florida, et al., Respondents.
No. AC-469.
District Court of Appeal of Florida, First District.
June 18, 1982.
*1332 James M. Corrigan, Asst. Atty. Gen., Tallahassee, for Jim Smith, Atty. Gen.
C. Lawrence Keesey, Tallahassee, for Dept. of Veterans and Community Affairs.
Gary P. Sams, of Hopping, Boyd, Green & Sams, P.A., Tallahassee, for petitioners.
John Shaw Curry, of Johnson, Harnett, Curry & Slay, Quincy, Marva Davis, Havana, and Ernest W. Welch, of Welch & Munroe, Tallahassee, for respondents.
ROBERT P. SMITH, Jr., Chief Judge.
By petition for a writ of prohibition or common law certiorari the Attorney General and others question the circuit court's denial of a motion to dismiss and its jurisdiction to proceed upon the amended complaint of the Gadsden County Board of County Commissioners for a declaratory judgment declaring among other things that section 380.07(3), part of the Environmental Land and Water Management Act of 1972, is unconstitutional on its face. Although the circuit court action arises out of pending section 120.57 proceedings before the Land and Water Adjudicatory Commission, we find that determining that discrete facial constitutionality question is not inappropriate in circuit court declaratory judgment proceedings, and that the court did not depart from the essential requirements of law in denying the Attorney General's motion to dismiss for failure to exhaust chapter 120 remedies.
Section 380.07(3) governs proceedings before the Land and Water Adjudicatory Commission, which is the Governor and Cabinet, on appeals from development orders issued by local governments in areas of critical state concern or regarding developments of regional impact. The text of the challenged statute is:
(3) Prior to issuing an order, the Florida Land and Water Adjudicatory Commission shall hold a hearing pursuant to the provisions of chapter 120. The commission shall encourage the submission of appeals on the record made below in cases in which the development order was issued after a full and complete hearing before the local government or an agency thereof.
The Board of County Commissioners mounted this attack on section 380.07(3) after Transgulf Pipeline Company appealed to the Adjudicatory Commission from the County Commissioners' order denying Transgulf a permit to build a petroleum products terminal, a development of regional impact, in Gadsden County. The Adjudicatory Commission referred Transgulf's appeal *1333 for hearing to the Division of Administrative Hearings, whose hearing officer, on December 21, 1979, ordered a new evidentiary hearing on the Transgulf application and scheduled the hearing in April 1980. The County Commissioners had urged to the hearing officer that the hearing be conducted on the record made before the County Commission. The hearing officer evidently determined that there was no "full and complete hearing before the local government."
The scheduled DOAH hearing was postponed when the County Commissioners complained to the circuit court for declaratory relief. The original complaint alleged both that section 380.07(3) is unconstitutional on its face, because it purports to "vest judicial power in the executive department agency contrary to Article V, Section 1, Florida Constitution," and that "Sections 380.06 and 380.07 as attempted to be applied in this case by the hearing officer" are unconstitutional as "a denial of equal protection under the law to Plaintiffs." An amended complaint later elaborated the County Commissioners' attack, first, on the facial constitutionality of section 380.07(3) and, second, on the correctness of the DOAH hearing officer's decision to convene a new evidentiary hearing. On the second issue, the amended complaint couched its attack on the hearing officer's decision in terms of the County Commissioners' professed "doubt" about Transgulf's entitlement to a new evidentiary hearing under circumstances that seemed to the County Commissioners to compel a contrary result:
Plaintiffs are in doubt as to the right of Transgulf to knowingly and wilfully choose not to be represented by an attorney at the hearing before the Board of County Commissioners and choosing not to cross-examine any witness or to have any witnesses of its own testify under oath, and subsequently, by filing Notice of Appeal under Section 380.07, Florida Statutes (1977), having the matter removed from the local forum of the Board of County Commissioners and to obtain a complete full new hearing by the Hearing Officer in Tallahassee.
The amended complaint alleged the facial unconstitutionality of section 380.07(3) in the following terms:
11. Plaintiffs contend that Section 380.07(3) is in violation of Article II, Section 3 and Article V, Section 1 of the Constitution of the State of Florida in that: (1) Chapter 120 contains no provisions which relate to appellate review proceedings by an administrative agency thus denying Plaintiffs equal protection of the law by granting unbridled discretion to the Hearing Officer; (2) there is a failure to set forth adequate standards for the determination by the Hearing Officer of facts, exercise of discretion, application of priorities, application of agency policy, differences of expert opinion and final recommendations; (3) the provisions of the statute are so vague and uncertain that persons affected thereby cannot determine whether actions and procedures are proper or improper, thus violating due process clauses of both Federal and State Constitutions; and (4) the provisions of the statute contain no procedural or substantive safeguards to permit the Governor and Cabinet, acting as the Florida Land and Water Adjudicatory Commission, to carry out their constitutional duties and prerogatives through the utilization of the Department of Environmental Resources, the Department of Natural Resources, State Planning Agency, and related groups as is required by Article II, Section 7 of the Constitution of the State of Florida.
On this petition the issue is whether the circuit court, by entertaining the amended complaint notwithstanding complainants' failure to exhaust available chapter 120 administrative and judicial remedies, acted without jurisdiction or so in excess of its jurisdiction as to justify issuance of the prohibitory writ, or departed from the essential requirements of law in a way irremediable on appeal from the court's final judgment. That determination is controlled by principles settled in Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla. 1978); Communities *1334 Financial Corp. v. Florida Department of Environmental Regulation, ___ So.2d ___ (Fla. 1st DCA 1982) [1982 FLW 866]; Ortega v. Owens-Corning Fiberglas Corp., 409 So.2d 530 (Fla. 1st DCA 1982); Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 400 So.2d 66 (Fla. 1st DCA 1981); Rice v. Dept. of Health and Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980); School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977); and State ex rel. Dept. of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977).
The complaint asserting "doubts" that an evidentiary hearing before the hearing officer is proper in this particular case, and asserting the unconstitutionality of section 380.07(3) as applied by the hearing officer, is transparently a collateral attack on an order which if erroneous was and is remediable by ordinary chapter 120 processes, even by immediate district court review if review of the final order would not be adequate relief, section 120.68(1). As to those questions, for the reasons particularly stated in the cited decisions of this Court and in Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979), the circuit court would depart from the essential requirements of law by entertaining a collateral attack on pending administrative proceedings. Those questions and the factual issues associated with them are to be determined, if necessary, on direct review of the administrative action, and on the record underlying that action.
The facial constitutional questions are another matter. The cited decisions establish that the circuit court does not exceed its lawful powers by entertaining a contest of the facial constitutionality of a statute judged to be an essential predicate for all administrative proceedings to follow. The questions pleaded by the County Commissioners, quoted above, seem conspicuously imprecise, especially when considered (as they must be on a facial attack) independently of the circumstances that are said to make the statute unconstitutional as applied. Nevertheless, those are facial constitutional questions, and the able circuit judge declared the questions "substantial" after an examination into their merits. In the interests of judicial economy, we choose not to descend into the merits of the constitutional questions. They have not been briefed here; therefore we cannot pronounce them "spurious or frivolous." Gulf Pines, supra, 361 So.2d at 699.
Judge Ervin's dissenting opinion presents powerful arguments, based on this Court's decisions in Rice and Key Haven, that might have influenced the circuit court to allow the unresolved question of facial statutory validity to accompany other issues through the administrative process for decision, if necessary, upon direct appeal following final agency action. As we said in Ortega, our decisions in Rice and Key Haven
counseled judicial adherence to the principle of exhaustion of administrative remedies even in the presence of a constitutional question, when it is made to appear that a district court of appeal can effectively decide that question, if necessary, upon an appeal from the agency's decision on nonconstitutional issues. [409 So.2d at 531.]
Forceful as Judge Ervin's opinion is, we decline to say the circuit court was obliged in these circumstances to take the course of judicial abstention on the facial constitutionality question. Whatever the merits of that substantive question, it concerns the facial validity of the statute that is the very predicate for the administrative review proceedings  the new hearing before the Land and Water Adjudicatory Commission  in which the unresolved constitutional question would be carried if the circuit court were to abstain. The circuit court might reasonably have concluded, in Ortega terms, that "in no sense" are the challenged administrative proceedings available to remedy any unconstitutionality in their statutory authorization; that "in no sense" are those questioned proceedings adequate to remedy the alleged invalidity of their own statutory birthright. 409 So.2d at 532.
*1335 The facial constitutional issue urged upon the circuit court can be decided only by constitutionally authorizing or deauthorizing the de novo review proceedings scheduled before the Land and Water Adjudicatory Commission by authority of section 380.07(3). No relief that those administrative proceedings might gain for the Board of County Commissioners, on the question of permitting a petroleum products terminal, would be equivalent to the relief requested of the circuit court. And in the same sense as we found in Ortega, the County Commissioners' constitutional claims "are inconsistent with and in derogation of" the scheduled proceedings, however correctly they may be conducted, before the Land and Water Adjudicatory Commission. 409 So.2d at 532. To the extent of entertaining the facial constitutionality issue, therefore, the circuit court may properly have regarded the case as the Supreme Court regarded Gulf Pines, holding that "it is pointless to require applicants to endure the time and expense of full administrative proceedings ... before obtaining a judicial determination as to the validity of that statutory prerequisite." 361 So.2d at 699.
Even as we again recognize the narrow futility doctrine enunciated in Gulf Pines as an exception to the exhaustion requirement, it is again appropriate that we reaffirm, for the guidance of circuit courts importuned to take and decide facial constitutionality issues inhering in pending or available administrative proceedings, the principles drawn from Gulf Pines, Rice and Key Haven: judicial abstention is the indicated course except when the essential statutory underpinnings of the administrative process are substantially questioned on facial constitutionality grounds, and it is shown that an immediate judicial decision on the constitutional question is desirable for pragmatic reasons. This latter condition is not to be casually assumed; for, as we said in Rice,
[T]here is precious little sound policy to justify dividing an administrative controversy into non-constitutional issues and two kinds of constitutional issues and parceling them out to separate agency and circuit court litigations which may eventually merge again in the same district court of appeal or, worse, in different district courts. [386 So.2d at 848]
If further proof of this proposition is required, the history of this litigation surely provides it. It should be clear by now that collateral circuit court litigation interrupting chapter 120 processes does not and, because of the district court's responsibility to guard the integrity of chapter 120 processes, cannot uncritically be depended on to end a dispute such as this swiftly and surely, relieving the contenders of expending "the time and expense of full administrative proceedings." Gulf Pines, 361 So.2d at 699. When it is asserted in circuit court that a threshold issue of facial statutory validity controls the case, and should be decided preliminarily, that court must bear in mind also that the constitutional question is invariably accompanied by a question of the propriety of intervening. That latter question necessarily implies the possibility of such proceedings as these in a district court, especially when as here the complaint seeks impermissibly to draw other issues along after the statutory validity question. The full consideration of this case in this Court since early 1981, and the preparation of opinions, have required the expenditure of "time and expense" by the parties and the Court substantially beyond that previously incurred in the circuit court. Inasmuch as we do not propose to pass lightly over the embedded question of whether the purpose or effect of circuit court litigation is to frustrate or delay executive branch action unjustifiably, the circuit court must consider the lost "time and expense" of collateral proceedings, as well as that which collateral proceedings may avoid, when pondering whether to carve out the facial constitutionality question or permit it to rise to the district court through normal chapter 120 processes.
We decline Judge Ervin's invitation to import into Florida law the unruly mass of federal court decisions on exhaustion, some of which support the idea that an *1336 administrative agency may initially decide questions of statutory validity, therefore counseling judicial abstention, while others appear to allow judicial intervention willynilly in nonconstitutional cases, based on "balancing" or discretionary factors. Florida courts have wisely avoided seduction by these litigious propositions. While our decisions teach that a Florida agency may construe a statute or apply it mindful of constitutional influences, questions of facial statutory validity must either be carried unparsed through the administrative process to a district court of appeal, for decision there if necessary, or they must be decided collaterally in circuit court. We see no reason to venture such a fundamental reordering of mature Florida exhaustion law as Judge Ervin suggests, least of all on the basis of imported federal precedent which, Professor Davis rightly says, is anything but coherent and predictable in application:
The [federal] answer to the question whether administrative remedies must be exhausted before a court may review administrative action has always been yes and no, with no clear guides as to when it is yes and when it is no. Since 1975 the law of exhaustion has become even more disorderly than it previously was. The lack of predictability is strong enough to raise the question whether the requirement is governed by discretion rather than by law.
.....
What deters the development of principle is the judicial inclination to decide exhaustion questions on the basis of the equities of whole cases, including the merits as well as the aspects related to exhaustion. Then conclusions are often stated in the form of an observation about exhaustion law. The result is a body of generalizations about exhaustion law that are largely or mostly contradictions.
K. Davis, Administrative Law Treatise § 20.11 at 279-80 (1982 Supp.).
The circuit court did not exceed its jurisdiction or depart from the essential requirements of law in denying a motion to dismiss this complaint seeking a declaration that section 380.07(3) is unconstitutional on its face. As we have said, no other pendent questions on the merits of the permitting dispute, on questions of the constitutional application of statutes, or on the correctness of administrative processes past or in prospect, will be entertained. The petition for writs of prohibition or certiorari is DENIED.
McCORD, J., concurs.
ERVIN, J., dissents, with written opinion.
ERVIN, Judge, dissenting.
I must respectfully disagree with the majority's determination that the Board of County Commissioners' complaint raises so substantial a constitutional question as to require judicial intrusion into the on-going administrative process. As the majority is well aware, the mere assertion of a constitutional issue does not automatically entitle a party to bypass administrative channels. See Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla. 1978); State ex rel. Florida State Board of Nursing v. Santora, 362 So.2d 116 (Fla. 1st DCA 1978); Metropolitan Dade Cty. v. Dept. of Commerce, 365 So.2d 432 (Fla. 3d DCA 1978). In regard to the county's vague allegations of agency encroachment upon a judicial prerogative by reason of a superior agency reviewing the action of an inferior agency, I should have thought by now that review by one agency over the actions of another was fairly well recognized by Florida courts. See, e.g., School Board of Flagler County v. Hauser, 293 So.2d 681 (Fla. 1974); School Board of Pinellas County v. Noble, 372 So.2d 1111 (Fla. 1979); Friends of the Everglades v. State Dept. of Environmental Regulation, 387 So.2d 511 (Fla. 1st DCA 1980); Booker Creek Preservation, Inc. v. Dept. of Environmental Regulation, 369 So.2d 655 (Fla. 2d DCA 1979). I fail to find any allegation in the county's complaint of such substance as to require an interruption of the administrative proceeding.
*1337 On a much broader, fundamental basis, however, I must take issue with my colleagues' views that seem to support the theory that any time a litigant levels a constitutional attack upon the facial validity of a statute, the agency is disabled from considering the case until the issue is resolved within a judicial forum. I do not think that Gulf Pines, relied upon by the majority, supports that position. Gulf Pines does not state that the judiciary is the sole branch of government possessing the power to interpret the constitution. To the contrary, certain language in that opinion undergirds my view that the requirement of exhaustion depends more upon considerations of policy than upon jurisdiction: "[W]hether the circumstances of a particular controversy warrant judicial intervention ... is ultimately one of policy rather than power, ... ." Id. at 699 (e.s.). Other language in Gulf Pines implies that the court was following that great wealth of federal authority[1] recognizing that exhaustion is generally required even as to constitutional challenges unless the case fits into one of several narrow exceptions[2] to the rule: "[A]s a general rule, the circuit court should refrain from entertaining declaratory suits except in the most extraordinary cases, where the party seeking to bypass the usual administrative channels can demonstrate that no adequate remedy remains available under Chapter 120." Id. at 699. The opinion further emphasizes the exhaustion requirement by quoting with approval the following statement from Odham v. Foremost Dairies, Inc., 128 So.2d 586, 593 (Fla. 1961): "[C]ourts must refrain from `promiscuous intervention' in agency affairs `except for the most urgent reasons.'" Id. at 698.
The Gulf Pines court no doubt was aware that Odham involved a facial assault upon the constitutionality of the statute conferring jurisdiction upon the agency to act. Yet Odham required the affected party to exhaust first its administrative remedies before seeking judicial relief. Odham's holding was apparently motivated by two factors: (1) the existence of unresolved, disputed nonconstitutional issues, which, if decided in favor of the party, might moot the constitutional question, and (2) the fact that no irreparable harm could inure to the party seeking judicial relief because it had the right of immediate review to the appellate court from the agency's final action.
Given the above language endorsing the doctrine of exhaustion, I remain unpersuaded that Gulf Pines intended to disable an agency from entertaining under any circumstances a challenge to the facial validity of a statute. I think it quite possible that the court decided, because of the Department's demonstrated inability to handle a relatively uncomplicated point of law,[3] that further referral to the administrative forum would prove futile, and therefore applied one of the generally recognized exceptions to the doctrine of exhaustion  the futility exception.
There is, to be sure, other language in Gulf Pines that implies its holding dispensing with agency designation is based upon a jurisdictional foundation  not upon policy considerations. Observe the following: "[T]he administrative hearing officer lacks jurisdiction to consider constitutional issues... ." Id. at 699. The literal effect of this statement would preclude agencies from determining a constitutional question as applied *1338 to a given factual situation. I doubt that the court intended such an all-encompassing result, particularly in view of the other contradictory dicta in the opinion, and neither, apparently, does a trend of recent appellate court decisions. See, e.g., Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979); Rice v. Dept. of HRS, 386 So.2d 844 (Fla. 1st DCA 1981); Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Fund, 400 So.2d 66 (Fla. 1st DCA 1981).
Regardless of Gulf Pines' purpose, the rule that only the judiciary possesses jurisdiction to consider constitutional claims finds support in a long line of Florida cases. See, e.g., State v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922); Pickerill v. Schott, 55 So.2d 716 (Fla. 1951); State ex rel. Howarth v. Jordan, 105 Fla. 322, 140 So. 908 (1932); Barr v. Watts, 70 So.2d 347 (Fla. 1953). This rule of judicial exclusivity, despite its observance through many years, is, in my judgment, based upon a faulty premise. State Board of Equalizers, supra, drawing upon certain statements from Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), holds that an administrative officer, sworn to obey the constitution, cannot, consistent with that oath, declare invalid a statute which he believes to be repugnant to the constitution.[4] His oath to obey the constitution means "to obey the constitution, not as the officer decided, but as judicially determined." 94 So. at 683 (e.s.). The next logical step in the court's syllogism was for it to deduce "that the power to declare an act unconstitutional is lodged nowhere but in the courts... ." 94 So.2d at 682. Yet, as one commentator tellingly observes, Marbury v. Madison never required that the Court's right to review constitutional issues "implied a limitation upon the power of the other departments of government to interpret the constitution in discharge of their functions... ." Swan, Administrative Adjudication of Constitutional Questions: Confusion in Florida Law and a Dying Misconception in Federal Law, 33 U.Miami L.Rev. 527, 570 (1979). Rather, Marbury's claim of judicial power to interpret was a defensive power  not an affirmative power  and was limited to the withholding of concurrence from a prior legislative or executive interpretation of the constitution only in a particular case in controversy. The power asserted in Marbury was entirely consistent with the doctrine of separation of powers; it was a concept of government so constrained by the people as to require the concurrence of two, if not three, independent branches of government. Id. Professor Swan concludes that
if the power of judicial review should ever become something more than a defensive power, it would immediately encounter a serious question under the separation of powers doctrine. It means that if the "subject matter" of substantive constitutional interpretation were ever thought to so "inhere" in the judiciary as to be a subject for judicial cognizance alone  a subject given exclusively to the courts  then the power of judicial review might well constitute an assertion of judicial supremacy tantamount to usurpation.
Id. at 572. The views advanced by Professor Swan are reflected in the more recent decisions of the United States Supreme Court, and intermediate federal courts,[5] rejecting any broad rule of agency disability to entertain, under any circumstance, a facial attack on the constitutionality of a statute.
Not since its opinion in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), has the United States Supreme Court spoken of an agency's inability to consider constitutional issues in terms of *1339 separation of powers. In Crowell, the Court was confronted with the question of whether a portion of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §§ 901-50 (Supp. V 1975)) was an unwarranted administrative intrusion into the judicial powers in violation of Article III of the United States Constitution. The challenged Act provided in part that the deputy commissioner's findings of fact, if supported by substantial evidence, would be conclusive in any later judicial action to enforce or set aside a compensation award. The Court replied that in cases involving a public right  i.e., cases between the government and persons subject to its authority  Congress was free to commit the determination of all facts, constitutional or otherwise, to a non-Article III court, subject only to compliance with the substantial evidence test. Id., 285 U.S. at 50, 52 S.Ct. at 292. However, as to cases relating to a private right  those involving the liability of one individual to another  any initial administrative determination of facts pertaining to jurisdictional requirements of a constitutional nature could not be assigned any degree of finality, but had to be tried by an Article III court de novo. Id.
In his dissent to the latter facet of the majority's opinion, Justice Brandeis argued that the grant of judicial power under Article III did not limit Congress's power to vest fact-finding authority in an administrative tribunal. In his view, the only limitation upon Congress's power to delegate existed within the Due Process Clause:
[I]f there be any controversy to which the judicial power extends that may not be subjected to the conclusive determination of administrative bodies or federal legislative courts, it is not because of any prohibition against the diminution of the jurisdiction of federal courts as such, but because, under certain circumstances, the constitutional requirement of due process is a requirement of judicial process.
Id., 285 U.S. at 87-88, 52 S.Ct. at 306-307.
It appears that the second portion of the majority's opinion in Crowell has since been rejected by the Court, and the views of Justice Brandeis endorsed. Six years following the Crowell decision, the Court in Myers v. Bethlehem Shipbuilding Corp., supra, at n. 1, was again faced with the question of whether administrative remedies were required to be exhausted in a case which involved a constitutional challenge. There, an employer alleged that an agency, the National Labor Relations Board, had no authority pursuant to the Wagner Act (29 U.S.C. § 151 (1964)) to conduct a hearing on charges lodged against it, on the ground that the Act, under the circumstances, was not applicable, since no showing was made that the employer's activities occurred within interstate commerce. Because there remained disputed factual issues as to the constitutionality of the Act as applied to the employer, the Court held that the Board was required to make the initial decision on the constitutional challenge to its jurisdiction. More significantly, the Court rejected the argument that the Board lacked the authority to entertain the action until the constitutional power to consider the case was judicially established, answering that Congress could appropriately place jurisdiction in the Board to conduct the initial trial of such issues. The Court was of the view that by legislatively committing the Board to do so, Congress would not in any way deprive the employer of due process protections because the Act provided it appropriate quasi-judicial procedures before the Board, as well as a direct right of appeal to an Article III court. 303 U.S. at 49-50, 58 S.Ct. at 462-463.
Professor Jaffee summarizes the federal approach to the requirement of administrative exhaustion of remedies as follows:
Certain proceedings "involving public rights" may be adjudicated either by an agency or if they have the requisite constitutional characteristics of "a case or controversy," by the constitutional courts. Congress may make the choice as it has done with claims against the United States to use either or both. Furthermore, even a suit involving "private right," that is "the liability of one individual to another," may also be adjudicated by an agency provided that a court is *1340 empowered on appeal to determine the law, and provided that the matter is not one at "common law" entitling the parties to a jury trial.
Jaffee, Judicial Control of Administrative Action 91 (1965).
It would seem that the above view has not, until recently, been shared by the Florida courts. Indeed, the rule of judicial exclusivity was extended even to the disabling of an agency from considering the validity of its own rules. See Department of Administration v. Department of Administration, 326 So.2d 187, 189 (Fla. 1st DCA 1976); Department of Revenue v. Young American Builders, 330 So.2d 864, 865 (Fla. 1st DCA 1976). And it has been extended also to bar an agency from ruling on the validity of a proposed rule. Adams Packing Ass'n. v. Fla. Dept. of Citrus, 352 So.2d 569 (Fla. 2d DCA 1977). Contra, Dept. of Environmental Reg. v. Leon Cty., 344 So.2d 297 (Fla. 1st DCA 1977).
The rule of agency disability was provided another curious interpretation by the Second District's application of the doctrine of res judicata to a constitutional challenge. Coulter v. Davin, supra, holds that if a constitutional violation is alleged to have occurred in the taking of the action by the agency in the proceeding to which the plaintiff was a party, the issue may not be decided in circuit court, but if the violation is not in the taking of action, but inheres in a statute or rule on which the agency bases its proposed action, such violation is not one which could have been asserted in the administrative proceeding or in the district court of appeal on review of the agency action. Accord, Dependable Air Cond. v. Office of Treasurer, 400 So.2d 117, 120 (Fla. 4th DCA 1981). The first facet of the Coulter rule is merely a restatement of the view, long recognized by Florida courts, that agencies have the power to rule upon the constitutionality of the statute as applied.[6]See Wood v. Twin Lakes Mobile Home Village, Inc., 123 So.2d 738 (Fla. 2d DCA 1960). The primary difficulty with the second facet of Coulter's holding is its assumption that an administrative agency may not determine, under any circumstances, the facial validity of a statute or rule  a view that has, until very recently, been indiscriminately endorsed by all district courts.
Something was seriously wrong with the Florida courts' perception of how the exhaustion doctrine should be applied to constitutional issues. Fortunately, a different approach was taken in the breakthrough case of Rice v. Dept. of HRS, supra. Notwithstanding the existence in Rice of a facial attack on the constitutionality of Section 382.16(5)(a), authorizing HRS to enter on a child's birth certificate the surname of the husband to whom the wife was married at the time of the child's conception, we directed the agency to build a record relating to the reasonableness of its statutory interpretation, although we reserved to ourselves the responsibility of passing initially upon the statute's constitutionality. On remand, the prophesy uttered in McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 583 (Fla. 1st DCA 1977), regarding the potential effects of scrupulous adherence to APA processes, was realized: The ensuing hearing and recommended order of the hearing officer subjected the "agency [head] to the sobering realization [that its] policies lack[ed] convincing wisdom... ." Specifically, HRS adopted the hearing officer's recommended interpretation that the statute did not require exclusive use of the father's name, and thereupon ordered that the hyphenated surname of both parents be entered on an amended birth certificate, thereby obviating the need for further judicial review. Key Haven Associated v. Board of Trustees, supra, 400 So.2d at 73, n. 15, review docketed no. 61,027 (Fla., orally *1341 argued April 14, 1982). Had we adopted the inflexible approach of Coulter v. Davin, supra, which implies that administrative agencies are dispossessed of subject matter jurisdiction from entertaining constitutional challenges to the facial validity of statutes or rules,[7] the agency would have been disabled from initially considering the limited questions we directed to it to enable us to resolve the constitutional issue. In remanding the case to the agency for further findings which ultimately granted appellants the relief they requested  their application for change of name  Rice, more than any other case, offered hope that the broad rule of agency disability was now ripe for reexamination. Unfortunately, such hopes were shortlived.
Our more recent opinion in Key Haven Associated v. Board of Trustees, supra, although declining to authorize a collateral attack in circuit court on the purported constitutional action of an agency, because the case involved a question of the constitutionality of the statute as applied, in dicta continued to accept the questionable judicial wisdom that agencies are disabled from considering "constitutional questions of facial statutory or rule validity." Key Haven, supra, at 71. Given the Rice decision, our reasons for clinging to such a preclusive view are unclear. In remanding the Rice case to the agency, we permitted it to make the initial interpretation of the statute, an interpretation which ultimately avoided the constitutional questions raised. If the broad principles of Rice were followed by us in the present case to their logical extension, it would not seem improper to permit the Land and Water Adjudicatory Commission to make the initial interpretation of the statute under attack  provided there is an avenue of relief available that could conceivably moot the constitutional issue.
Rice did not of course involve a situation in which the party affected by agency action sought  as here  an interruption of the on-going agency process by filing a declaratory suit in circuit court, attacking the facial validity of a statute. By seeking review from the agency action, and by challenging the validity of the statute de novo in this court, the appellants in Rice chose this court  not the circuit court  as the proper forum for litigating their constitutional grievances. The conclusion now reached by the majority suggests that had the affected parties in Rice importuned collateral circuit court intervention before the administrative processes were concluded, and had the trial court granted it, we in turn would have deferred to the trial court's ruling  thereby denying to us a fact-finding record directed to the constitutional question, denying to the agency the respect owed to its own autonomy, and, perhaps ultimately, precluding a determination of the case on nonconstitutional grounds. The majority's opinion also provides a signal to parties subjected to proposed administrative action that claims of marginal constitutional substance will continue to be honored only within a judicial forum.
The resulting costs to an orderly, efficient disposition of administrative issues in future cases could prove immeasurable. Because of the requirement that the circuit court should stay any pending administrative issues during a judicial determination of the constitutional claim,[8]E.T. Legg & Co. v. Franza, 383 So.2d 962 (Fla. 4th DCA 1980), a nonconstitutional claim, which could possibly moot the constitutional issue, *1342 must nevertheless await resolution of the latter. Additionally, the bifurcation of the issues into separate forums produces a waste of judicial[9] and administrative energies  a result that was emphatically denounced in Rice:
[W]e think there is precious little sound policy to justify dividing an administrative controversy into nonconstitutional issues and two kinds of constitutional issues and parceling them out to separate agency and circuit court litigations which may eventually merge again in the same district court of appeal or, worse, in different district courts.
386 So.2d at 848. Considering the present congestion of caseloads in both appellate and trial courts, I question whether on balance any benefit resulting from maintaining a broad theory of judicial exclusivity in the face of a constitutional challenge offsets its recognizable costs.
As was observed in a recent article in the Florida Bar Journal,[10] there is at present little agreement among the various district courts of appeal relating to whether a constitutional question may await resolution at the appellate level while the nonconstitutional issues are first administratively determined. As previously stated, the First District, represented by Rice, differs with the decision of the Second District in Coulter, holding that an appellate court may not consider de novo a constitutional issue which could not have been considered by the agency. The Third and Fourth Districts, although initially accepting the approach of the Second, F.O.P. and AFSCME v. City of Miami, 384 So.2d 726 (Fla. 3d DCA 1980); Dependable Air Cond. v. Office of Treasurer, supra, now have adopted Rice's view. See Solimena v. State Dept. of Business Reg., 402 So.2d 1240, 1245, n. 6 (Fla. 3d DCA 1981), and 2829 Corp. v. Division of Alcoholic Beverages, 410 So.2d 539 (Fla. 4th DCA 1982). All apparently, however, accede to the view that an agency may not, under any circumstances, initially address the facial validity of a statute or the validity of its own rule; that such questions are reserved exclusively for judicial determination.
If the determination of judicial intervention is truly "one of policy rather than of power," Gulf Pines, supra, at 699, I consider that the Florida courts would be well advised to consider the balancing approach that has long been followed by the federal system in determining whether to require exhaustion, even in the face of a constitutional question. Some of the factors influencing a decision in favor of going forward with the administrative process include an avoidance of premature or unnecessary judicial labor, an assurance of agency action by the authentic agency head, an encouragement of agency decisionmaking processes, the availability of remedies simpler and less expensive than court litigation, and an encouragement of a responsible automony in the executive branch of state government. Key Haven, supra, 400 So.2d 73, *1343 citing Patsy v. Florida Int'l. University, 634 F.2d 900, 911-912 (5th Cir.1981). Restated, adherence to the exhaustion doctrine promotes deference to agency expertise, facilitation of judicial review through creation of a factual record by the agency, and, not insignificantly, conservation of judicial energy if the judicial controversy is mooted by the agency granting the relief sought by the affected party. Baldwin Metals Co., Inc. v. Donovan, 642 F.2d 768, 771-72 (5th Cir.1981).
Balanced against these considerations favoring exhaustion are three general exceptions:[11] (1) the subordinate role theory  an acknowledgement that because the agency's existence is derived from the legislature, it would be incongruous for an agency to ignore what the legislature has said on a point of statutory law;[12] (2) the lack of competence theory, holding that since agencies, because of their selection, do not always follow the procedures necessary to inform the decisionmaker on subtle points of constitutional law, they should therefore be precluded from addressing such issues;[13] (3) the ultra vires theory, stating that agencies should not be permitted to entertain challenges to their own jurisdiction, since to permit them to do so presupposes the existence of the very jurisdiction under attack.[14]
These exceptions are, of course, not all-inclusive. The federal courts often decline to require exhaustion, if, for example, they deem the prescribed administrative procedure clearly "inadequate to prevent irreparable injury ...", American Fed'n. of Gov't. Employees, Local 1904 v. Resor, 442 F.2d 993, 994-95 (3d Cir.1971); accord, Renegotiation Bd. v. Bannercraft Clothing Co., Inc., 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974); McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), or if agency involvement has already resulted in blatant violations of constitutional or statutory rights. Rhodes v. United States, 574 F.2d 1179 (5th Cir.1978); Susquehanna Valley Alliance v. Three Mile Nuclear Reactor, 619 F.2d 231 (3d Cir.1980). Perhaps the above stated reasons for dispensing with the exhaustion requirement in such cases can generally be lumped into the "futility" classification, which is a refinement of the ultra vires exception  a recognition that an affected party will not be required to pursue an administrative remedy that is highly unlikely to be forthcoming.[15]
There would appear to be no sound reason under any of the above exceptions why an agency  assuming its competency to act  could not consider a constitutional objection to its own rule. Federal agencies have done so on numerous occasions.[16]
We see from the above survey of federal cases that there is no broad, inflexible rule disabling agencies from entertaining an attack on the facial validity of a statute. Rather, the requirement of exhaustion is there determined on a case-by-case basis *1344 and turns more often than not on a balancing of pragmatic considerations.[17] One commentator concludes from his analysis of pertinent federal authority that such a determination is comparable to and coextends with normal summary judgment practice.[18] Thus, in a case where the issues as framed by the pleadings involve a challenge to the facial validity of a statute, the challenger should still be required to exhaust his available administrative remedies  subject to the usual exceptions  if the constitutional question could not be decided upon motion for summary judgment.[19]
This approach is exemplified by Aircraft & Diesel Equipment Co. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947), in which the Court dismissed a petition that had combined a nonconstitutional attack on a decision of the War Contracts Adjustment Board with a challenge to the constitutionality of the Renegotiation Act (50 U.S.C. App. § 1191 (1945)). The Court held that judicial intrusion was premature due to the failure of the petitioner to pursue its administrative remedies by appeal to an administrative tribunal, the Tax Court, noting that the Tax Court was empowered to pass on all questions, "constitutional or otherwise." 331 U.S. at 769, n. 30, 67 S.Ct. at 1501, n. 30. A more important reason advanced for the Court's requirement of exhaustion was that if the contractor prevailed on statutory grounds, the necessity to decide the constitutional issue would be avoided. Id. at 772, 67 S.Ct. at 1503.
The potential mooting of a constitutional question is an often cited consideration in a determination of whether exhaustion should be required. See, e.g., Dubois Clubs of America v. Clark, 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967); Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128 (3d Cir.1979); Baldwin Metals Co., Inc. v. Donovan, supra. In Donovan, the defendant was charged with certain violations of the Occupational Safety and Health Act (OSHA), but before the administrative process had been concluded, a complaint was filed by defendant in a federal district court, seeking both a declaration that the inspection warrant which had been issued was unconstitutional, and an order suppressing the use of any evidence obtained pursuant to the warrant, as well as an injunction prohibiting OSHA officials from taking any further action. The injunction was granted, and the Secretary of Labor appealed to the Fifth Circuit. In reversing, the court initially observed that the interests of agency expertise did not require exhaustion since agency officials had no special expertise which would make them adept at handling issues concerning the constitutional validity of warrants, but it nevertheless concluded that the exhaustion doctrine should be adhered to because the constitutional issues might eventually be mooted by the agency's decision on the merits in favor of the allegedly aggrieved party.
Even in a situation where the issue as framed by the pleadings involves only a challenge to the validity of a statute, exhaustion might yet be required if the constitutional decision is likely to resolve into a decision as applied to a given factual situation, for example, where the challenge rests *1345 upon due process or equal protection grounds. Rice was such a case. The challenge to Section 382.16(5)(a), relating to the name that should be placed on the child's birth certificate, was launched on grounds of denial of equal protection of the law, due process and freedom of speech. The case ultimately turned on a simple interpretation of the statute, after remand to the agency, for the purpose of building a record as an aid to the appellate court in determining, among other things, "the availability of less restrictive alternative means of achieving the goals of the statute." 386 So.2d at 850. Rice, thus, was a recognition of the principle that an informed judicial opinion often requires an appraisal of the utility and necessity of legislative decisions in light of constitutional norms. This principle is frequently applied in those cases where neither the handiwork of the legislature nor that of the framers is free from ambiguity. In such instances, an informed opinion cannot be reached without a record apprizing the courts of the agency's factual conclusions, potential alternative actions and general policy decisions.[20] Clearly, a record prepared for the purpose of clarifying the legislative intent may often assist the courts in avoiding an unnecessary and hence unjustified conclusion affecting constitutional costs.
If, however, no factual dispute is at issue, if no agency exposition is required to resolve intricate and uncertain questions of statutory interpretation, under the subordinate role theory, the agency would be deemed to lack the power to consider the case. This principle is perhaps best illustrated by the following quote from Public Utilities Commission of California v. United States, 355 U.S. 534, 539-40, 78 S.Ct. 446, 450-451, 2 L.Ed.2d 470 (1958):
If * * * an administrative remedy might leave no remnant of the constitutional question, the administrative remedy should plainly be pursued. But where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right... .
We recently applied the above reasoning to an issue involving whether administrative exhaustion was required as a predicate to a litigant bringing a judicial claim, seeking there both a declaration that the workers' compensation act was constitutionally invalid and a common law tort remedy for redress of his injuries. Ortega v. Owens-Corning Fiberglass Corp., 409 So.2d 530 (Fla. 1st DCA 1982). We concluded that the issues, as framed, involved no question that required answer by a deputy commissioner, since they were totally inconsistent with and in derogation of any compensation claim.
With the above precepts in mind, upon turning to the relief sought in the complaint below, we find that the complainants request a declaratory judgment (1) declaring Section 380.07(3) unconstitutional, as it permits a hearing officer of the Division of Administrative Hearings to conduct a de novo hearing on appeal from an order of the local government made upon a development of regional impact application, and (2) declaring the rights of the county to be decided by the duly elected officers of Gadsden County. The latter request apparently relates to the administrative hearing, which, it is alleged, if allowed to proceed and an administrative order were entered, reversing the decision of the county, the result would impact adversely on the environment of the county, as well as on the general welfare, health, safety and economy of the community. Simply put, most of the county's vague, "imprecise" allegations refer to a potential, future injury, occurring only if its permit order is reversed by the hearing officer. Without addressing any question whether the scope of Florida's Declaratory Judgment Act extends to facts which are hypothetical, speculative, and uncertain *1346 of occurrence, see Williams v. Howard, 329 So.2d 277, 282 (Fla. 1976), I think it reasonable to conclude that the complaint involves allegations of nonconstitutional issues which may ultimately be determined in favor of the county, as well as allegations of constitutional deficiencies which might be clarified by an interpretation by the agency of its responsibilities under the statute in answer to the complainants' over broad delegation argument.
Given the abundant safeguards built into our Administrative Procedure Act, there can hardly be any compelling, logical reason for the courts to continue carving out indiscriminately a discrete class of cases from agency review, unless the case is one which fits into one of the recognized exceptions to the exhaustion requirement. The central purpose of the Act is to provide
basic fairness which should surround all governmental activity, such as the right ... to present viewpoints and to challenge the view of others, the right to develop a record which is capable of court review, the right to locate precedent and have it applied, and the right to know the factual bases and policy reasons for agency action... .
Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, p. 5 (March 9, 1974) (unpublished article in the Florida Supreme Court Law Library).
Nor can it be logically argued that the agency lacks the competency to confront the constitutional issue since there is available a legally trained, independent hearing officer of the Department of Administration who unquestionably possesses all qualifications necessary to consider such issue. And should the agency, on review of the hearing officer's recommendations, seek to displace them, McDonald v. Dept. of Banking and Finance, supra, in no uncertain terms requires the agency, in its final order, to take into account the officer's findings of fact, conclusions of law and any exceptions the parties may have filed to those conclusions. Moreover, its order "must display the agency's rationale. It must address countervailing arguments addressed in the record and urged by a hearing officer's recommended findings and conclusions... ." McDonald, supra, at 583. Because the final order and the record on which it is based is, by operation of Section 120.68, subject to direct review by an Article V Court, any conceivable argument that the county would be irreparably harmed by permitting the agency to address the constitutional question is, in my judgment, frivolous. Cf. Odham v. Foremost Dairies, Inc., supra.
By authorizing an administrative determination of the constitutional issue, we would not be advocating any change in our position, stated in previous cases, that the Administrative Procedure Act cannot displace the circuit court's jurisdiction to consider the facial invalidity of statutes. See, e.g., Dept. of Revenue v. Young American Builders, supra; State ex rel. Dept. of General Serv. v. Willis, supra; School Bd. of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977). The thrust of our inquiry should now be, not whether there is a lack of jurisdiction within either forum, but whether on balance there is any compelling exception that would require judicial intrusion. If we can accept the premise that there is no broad rule disabling agencies in all circumstances from considering a constitutional challenge, then we could conclude  no less than we did in either Willis or Mitchell  that the circuit court's jurisdiction over the class of suit involved (in Willis, injunctive relief, and in Mitchell, a declaration of rights) yet abides, but because the complainants avoided a clear avenue of administrative relief, the judicial remedy sought must be denied.
If, however, we must continue to embrace the view  unsound in either practical effect or legal theory  that the agency may not consider the facial validity of a statute, notwithstanding the existence of nonconstitutional issues, then I see no reason why, as was done in Rice, the agency should not be permitted to establish a record directed to the constitutional issue, reserving to ourselves  rather than the circuit court  a de novo determination of the constitutional question  should that issue yet remain.
*1347 In my view, the benefits of permitting the agency to entertain the constitutional question far outweigh any potential costs. We would have before us a record of the administrative proceeding addressed to all issues; we could be provided with any estimate for the need of the challenged provision and the efficacy of potential alternatives that could aid us in avoiding potentially unnecessary constitutional actions; we would avoid a bifurcation of the administrative and constitutional issues into two different forums, and finally, by authorizing the administrators to act, we would acknowledge that agencies can also make determinations appropriate "`to the dignity and burden of their own responsibility.'"[21]
NOTES
[1] See, e.g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938): "[N]o one is entitled to judicial relief for a supposed or theoretical injury until the prescribed administrative remedy has been exhausted." See also cases cited at pp. 1343-1344, infra.
[2] See page 1343 infra.
[3] The Florida Supreme Court had earlier in Dickinson v. State, 227 So.2d 36 (Fla. 1969), held the need criteria of Section 559.39(2), Florida Statutes (1969), to be an unconstitutional delegation of legislative authority. After Oaklawn had filed an application to establish a new cemetery, the legislature in 1976 amended Section 559.39(2) to cure the defect noted in Dickinson by providing more specific criteria upon which a determination of need could be based. Gulf Pines, supra, at 697. The request for the license was denied by the Department's retroactive application of the need criteria of Section 559.39(2), as amended.
[4] Interestingly, an opinion of the California Supreme Court arrived at the opposite conclusion. It holds that the oath to uphold the constitution required of all public officials creates a duty not to enforce invalid laws, but rather a duty to inquire into and pass judgment on legislative pronouncements. Southern Pacific Transportation Co. v. Public Utilities Commission, 18 Cal.3d 308, 134 Cal. Rptr. 189, 556 P.2d 289, 290-91, n. 2 (1976). It therefore permitted the agency to declare invalid a state statute which had delegated to it certain powers to regulate railroads.
[5] See cases cited at pp. 1343-1344, infra.
[6] Professor Davis approves such an approach. He explains that an agency must be empowered to pass upon the constitutionality of a statute as applied, otherwise it would be incapable of executing the intent of the legislature, whether expressed, implied or presumed. 3 K. Davis, Administrative Law Treatise, § 20.04, 74 (1958). He would deny to agencies, however, the power to rule upon the facial validity of a statute, stating: "Only the courts have authority to take action which runs counter to the express will of the legislative body." Id.
[7] There is of course no general subject matter distinction between judicial and quasi-judicial power. The great weight of authority recognizes that whatever a court may decide, an agency has the power to decide, so long as it acts in a judicial mode and so long as its decisions are reviewable by a court and its functions are subject to legislative revision. State, Dept. of Administration v. Stevens, 344 So.2d 290, 293 (Fla. 1st DCA 1977) (quoting from 1 Am.Jur.2d, Administrative Law, §§ 138, 145, 154, 157 and 161). Curiously, however, Stevens refused to apply this general rule to an agency's power to decide the validity of a statute or rule. See Stevens at 295, n. 2.
[8] There is no issue before us relating to a stay of the administrative proceeding since the lower court's order did not require a stay; nevertheless, it does not appear from the record that the administrative proceeding has continued.
[9] Consider the number of multiple actions that were sought in 2829 Corp. v. Division of Alcoholic Beverages, 410 So.2d 539 (Fla. 4th DCA 1982): After Kit Kat was served by the agency with both an order to show cause why the license should not be suspended, and an emergency order of suspension, Kit Kat appealed, and sought a stay which the Fourth District granted, directing, however, the parties to proceed with the hearing scheduled on the show cause order. Later Kit Kat demanded a Section 120.57 hearing before the Division but, notwithstanding its request, it subsequently filed in circuit court a suit for declaratory relief, alleging the facial invalidity of Section 120.68(7). The Division next filed in the appellate court a petition to vacate the stay earlier entered. While the petition was still pending, the circuit court issued a temporary injunction prohibiting further administrative proceedings pending a decision on the constitutional claim. Shortly thereafter, the district court acted on the petition to vacate, denying it without prejudice to the Division's renewal of it after final agency action. In the meantime the Division appealed the entry of the temporary order. At that point, the district court, perhaps then judicially exhausted by the barrage of motions and interlocutory appeals, held, contrary to what it had earlier stated in Dependable Air Cond. v. Office of Treasurer, supra, that the constitutionality of the statute could be initially considered by it and then set aside the temporary injunction.
[10] Linn, Constitutional Issues in Administrative Practice, 55 Fla.B.J. 840, 843 (1981).
[11] See, Swan, supra, at 532-34.
[12] Federal cases representing this view include Public Utilities Comm. of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958) (state agency could hardly be expected to address question whether the United States can be subjected to the discretionary authority of a state agency to regulate rates charged by intrastate carriers for the transportation of government property); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (widow seeking survivor's benefits under Social Security Act was not required to exhaust her administrative remedies because the only asserted claim was the facial invalidity of the statute that provided a survivor married to a spouse for less than nine months was ineligible to receive benefits).
[13] See, for example, Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 242-43, 89 S.Ct. 414, 418-419, 21 L.Ed.2d 402 (1968) (composition of draft boards and their administrative procedures rendered them unsuitable forums for adjudicating attacks on the constitutionality of the draft laws) (Harlan, J., concurring).
[14] See, Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (remand to state administrative board would be futile because it was unconstitutionally constituted).
[15] Swan, supra, at 591.
[16] See, Note, The Authority of Administrative Agencies to Consider the Constitutionality of Statutes, 90 Harv.L.Rev. 1682, 87-88 (1977).
[17] Although our opinion in State ex rel. Dept. Of General Serv. v. Willis, 344 So.2d 580, 591 (Fla. 1st DCA 1977), did not address a question involving an agency's consideration of the facial validity of a statute, it nevertheless parallels the federal authority by providing the following catalogue of potential abuses which might require judicial intervention:

No lack of general authority in the Department is suggested; nor is it shown, if that is the case, that the Act has no remedy for it. No illegal conduct by the Department is shown; nor, if that is the case, that the Act cannot remedy the illegality. No departmental ignorance of the law, the facts or the public good is shown; nor, if any of that is the case, that the Act provides no remedy for it. No claim is made the Department ignores or refuses to recognize relators' substantial interests, or refuses to afford a hearing, or otherwise refuses to recognize that relators' grievance is cognizable administratively. The respondent contractors have made no showing that remedies available under the Act are inadequate.
[18] Swan, supra, at 536.
[19] Id.
[20] See, generally Note, supra, n. 16, and Ely, Legislative and Administrative Motivation in Constitutional Law, 79 Yale L.J. 1205 (1970).
[21] A. Bickel, The Least Dangerous Branch 24 (quoted in Key Haaven, supra, at 73).