430 So.2d 928 (1983)
STATE of Florida COMMISSION ON ETHICS, et al., Appellant,
v.
John SULLIVAN and Wilma Sullivan, Appellees.
No. AL-13.
District Court of Appeal of Florida, First District.
April 19, 1983.
*929 Jim Smith, Atty. Gen., Patricia R. Gleason, Asst. Atty. Gen., and Philip C. Claypool, Staff Atty., Com'n on Ethics, Tallahassee, for appellant.
Stephen Marc Slepin of Slepin, Slepin, Lambert & Waas, Tallahassee, for appellees.

REVISED OPINION[*]
PER CURIAM.
This case presents the primary issues of whether the Commission on Ethics has authority to receive and investigate sworn complaints of violations of Sections 99.012(7) and 116.111, Florida Statutes, by public officers or employees, and of whether this Court's earlier per curiam affirmance (PCA) of a Commission order denying appellees' motion to dismiss for lack of jurisdiction was res judicata, so as to preclude a contrary ruling by the trial court. For the reasons set forth below, we hold that the trial court erred in proceeding to judgment after this court's PCA, that the Commission does have such authority, and that this Court's earlier PCA on an interlocutory appeal was res judicata on the issue of the Commission's jurisdiction to continue with the administrative proceeding.
A statement of the convoluted procedural history of this case is critical to an understanding of the issue posed here: Wilma Sullivan was the Leon County Supervisor of Elections from 1965 until January, 1981. She did not seek reelection. Her son, John Sullivan, was her Deputy Supervisor of Elections during the later years. John filed for and was elected as the Leon County Supervisor of Elections in the 1980 elections, succeeding his mother in January, 1981. Cliff Mason was an unsuccessful write-in candidate for the Leon County Supervisor's office in the 1980 elections. In late January, 1981, Cliff filed complaints with the Commission alleging that Wilma and John Sullivan had committed breaches of the public trust in violation of Article II, Section 8(f), Florida Constitution. Wilma was alleged to have violated the antinepotism law, Section 116.111, Florida Statutes (1977), by appointing, employing, promoting or advancing son John in his position as Deputy Supervisor of Elections. John was alleged to have violated Section 99.012(7), Florida Statutes (Supp. 1980), by failing to take a leave of absence from his position as Deputy Supervisor of Elections after filing for the office of Supervisor of Elections.
On 23 March 1981, Wilma and John each moved the Commission to dismiss the complaint *930 against them for lack of jurisdiction, arguing that Wilma was no longer a public officer or public employee and was not so when the complaint was filed; that the Commission did not have jurisdiction under either Article II, Section 8(f), Florida Constitution, or Chapter 112, part III, Florida Statutes, to hear complaints of violations under Sections 99.012(7) and 116.111, Florida Statutes; that the Commission did not have authority to define "breach of public trust" on an ad hoc, case-by-case basis; and that the Commission did not have the authority under subsection 8(f) to adopt rules expanding its authority beyond that specifically provided by Chapter 112, part III.
The Sullivans' motions were argued before the Commission on 1 April 1981 and 13 May 1981. The Commission denied the motions to dismiss at the conclusion of the May 13 hearing and issued written orders on 15 May 1981 denying the Sullivans' motions and setting the complaints for public hearing.
On 22 May 1981, Wilma Sullivan petitioned this Court for a writ of prohibition, arguing that the Commission had departed from the essential requirements of law by attempting to exercise jurisdiction over her as a non-public officer and non-public employee and over matters embraced by Section 116.111. On 25 June 1981, after receiving the Commission's response to a show cause order and considering the petition on the merits, this Court issued an order denying Wilma's petition for writ of prohibition.
On 27 May 1981, Wilma and John filed individual complaints against the Commission in Circuit Court, Leon County, for declaratory judgment and injunctive relief pursuant to Chapter 86, Florida Statutes (1979). The issues posed by Wilma (briefly, restated) were: (1) whether the Commission was subject to Chapter 120, Florida Statutes (1979), (2) whether she was entitled to and afforded a probable cause hearing before the ordering of an evidentiary proceeding on the merits of the complaint against her, (3) whether Commission rule 34-5.015 was invalid, or invalid as applied to her, and whether the Commission had authority to adopt rules creating or defining offenses cognizable by it; (4) whether the Commission could define a "breach of public trust" on a case-by-case basis, (5) whether the Commission has jurisdiction to hear alleged violations of Section 116.111, and (6) whether the Commission has jurisdiction over a former public official or public officer. John posed five issues for declaratory judgment: the first four were the same as those presented by Wilma; his fifth issue was whether the Commission had jurisdiction to hear alleged violations of Section 99.012(7).
On 12 June 1981, pursuant to Section 120.68(1), Florida Statutes, Wilma and John filed notices of appeal with this Court seeking review of the Commission's orders of 15 May 1981 denying their motions to dismiss and ordering evidentiary hearings on the merits. These appeals were consolidated, and, on 28 August 1981, this Court denied the Commission's motion to dismiss the appeals as being appeals of non-final orders contrary to Rule 9.110, Florida Rules of Appellate Procedure, holding that the appeals would be considered as petitions to review non-final administrative action under Rule 9.100, Florida Rules of Appellate Procedure. The Sullivans presented four issues to this Court: (1) whether they were entitled to and received a probable cause hearing before the Commission, (2) whether the Commission had subject matter jurisdiction over complaints of violations of Sections 116.111 and 99.012(7), (3) whether Commission Rule 34-5.015 was valid, and (4) whether the Commission had [personal] jurisdiction of a non-officer, Wilma Sullivan. This Court was not informed of any action then pending in circuit court seeking a declaration of the Commission's jurisdiction. On 23 October 1981, we per curiam affirmed the Commission's action denying the Sullivans' motions for dismissal for lack of jurisdiction and on 13 November 1981 denied a motion for rehearing. Sullivan v. Florida Commission on Ethics, 407 So.2d 1110 (Fla. 1st DCA 1981). Thereafter, the Sullivans pursued their consolidated complaints seeking declaratory judgment in Leon County Circuit Court. The court issued *931 a final declaratory judgment on 4 March 1982 ordering and adjudging that the Commission had no authority to investigate complaints alleging conduct which may violate provisions of Florida Statutes or the Constitution other than Chapter 112, part III, Florida Statutes, and Article II, Section 8, Florida Constitution; that the Commission lacked subject matter jurisdiction over the complaints alleging conduct by John Sullivan in violation of Section 116.111 [sic], and by Wilma Sullivan in violation of Section 99.012(7) [sic], and that the foregoing being dispositive of the matters before the court, no ruling was made with respect to other issues posed in the petitions.
In arguing their case on this appeal, and apparently in the circuit court below, the Commission appears to have avoided taking the position that Chapter 112, part III, provides Commission jurisdiction for an investigation of complaints of Sections 99.012(7) and 116.111, and instead has focused its arguments on Article II, Section 8, Florida Constitution, as the basis for Commission authority. We find that Chapter 112, part III, provides jurisdiction and decline the urgings of the parties to engage in what we view as unnecessary constitutional pronouncements. For the edification of the parties, we will now make clear what our earlier PCA did not.
Appellant urges three points on appeal:
(1) The trial court erred in not finding this Court's per curiam affirmance (Sullivan v. Florida Commission on Ethics, 407 So.2d 1110 (Fla. 1st DCA 1981)) of the Commission's denial of the Sullivans' motion to dismiss for lack of jurisdiction to be res judicata.
(2) The trial court erred in holding that the Commission had no subject matter jurisdiction over the complaints against the Sullivans, and
(3) The trial court erred in rendering a declaratory judgment when the Sullivans' had an adequate remedy to challenge the Commission's jurisdiction by seeking appellate review in this court.
The three issues are inextricably interwoven. We must consider the exhaustion of remedies issue (issue (3)), and the res judicata issue (issue (1)). The resolution of both (or either) of these issues in the Commission's favor would ordinarily dictate that we refrain from considering the Circuit Court's ruling on the merits (issue (2)). However, because of the unusual posture of this case as it appears before us on this appeal, we consider that a more definitive resolution of the merits of the jurisdictional controversy underlying this litigation is called for.
Issue (3), exhaustion of remedies, has two aspects: First, whether the trial court was in error in accepting jurisdiction of the case initially, in view of the availability of a Section 120.68(1) remedy by appeal of the Commission's actions to this court; and second, even if the trial court properly exercised jurisdiction in entertaining the case in its early stages, whether it was improper for it to do so after this court rendered its decision in the Sullivans' Section 120.68(1) appeal.
The Commission's motions to dismiss the complaints for failure to exhaust chapter 120, filed June 17, 1981, were apparently meritorious, there being no factual showing in the complaints that chapter 120 remedies were inadequate, and no allegation concerning the facial constitutionality of a statute. Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982); State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977); Smith v. Willis, 415 So.2d 1331 (Fla. 1st DCA 1982). Yet the motions to dismiss remained pending for some eight months in circuit court, and were not ruled upon even in the final judgment here appealed, entered March 4, 1982. The court's omission to rule upon the dismissal motions is understandable, for it appears the Commission never brought the motions on for hearing, and indeed, apparently sought a ruling on the merits, by answer filed shortly before the final judgment was entered, even while the motions to dismiss were yet outstanding.[1] *932 Further, the Commission accompanied its motions to dismiss with a groundless assertion that the Commission is not subject to chapter 120  an assertion which, while undisposed of, in effect denied that chapter 120 remedies were available. Because of these complicating factors, and because the motion to dismiss was carried along in the file without a ruling by the circuit judge, even long after this court's decision announced October 23, 1981, settling the extent of the Commission's powers in the premises, we regard our October 1981 decision as decisive of this litigation, mooting the exhaustion question and rendering further discussion of it academic.
The case law on the effect of a "per curiam, affirmed" decision (PCA) is clear: It becomes the law of the case, is res judicata, but is not stare decisis. In South Florida Hospital Corp. v. McCrea, 118 So.2d 25 (Fla. 1960), the court addressed the effect of the word "affirmed" when used as the sole utterance of an appellate court in disposing of a case. The court noted that the word "necessarily means that the appellate court has carefully examined all points raised by all appealing parties and found them to be without merit." Id. at 31. Of similar import is Taylor v. Knight, 234 So.2d 156 (Fla. 1st DCA 1970), where this court denied a petition for rehearing of a PCA which urged that the appellants were entitled to consideration of the merits in the form of a written opinion. This court stated that in affirming without opinion it was "not now denying and has not denied appellants herein any constitutional right and has not overlooked or failed to consider the jurisprudence of this State in ruling upon the merits of the appeal." Id. at 157. Appellees urge that these cases are distinguishable and cites Schooley v. Judd, 149 So.2d 587 (Fla. 2nd DCA 1963), for the proposition that a decision without an opinion "does not establish any point of law; and there is no presumption that the affirmance was on the merits." Id. at 590. We note that the issue in Schooley was the stare decisis effect of the PCA in Hoffman v. Drennen, 88 So.2d 624 (Fla. 1956). As can be seen from the styles of these cases, there was no identity of persons and parties and, thus, no issue of res judicata. Donahue v. Davis, 68 So.2d 163 (Fla. 1953). The quoted words from Schooley lend themselves to misapplication, but we have no quarrel with its holding that, in the stare decisis context, a PCA establishes no precedential point of law and other parties before a different court may not go behind a PCA to argue that it establishes a controlling precedent. Here, however, stare decisis is not at issue and Schooley is inapposite.
This court's PCA on the Sullivans' Section 120.68(1) appeal affirmed the Commission's denial of the Sullivans' motion to dismiss, which was based on jurisdictional grounds. Our PCA by its very nature was a ruling on that narrow issue, based upon a determination by the court that, at least as to some of the grounds asserted on appeal, appellate court review of a final decision by the Commission would not provide an adequate remedy for the Sullivans.[2]See, *933 State, ex rel. Sarasota County v. Boyer, 360 So.2d 388 (Fla. 1978). Otherwise, the proper action for this court would have been to dismiss the appeal. Boyer, supra; Section 120.68(1), Florida Statutes; Rule 9.100, Florida Appellate Rules.[3]
Returning again to the matter of whether the trial court should have deferred to the authority of this court and ordered a dismissal of the case after learning of this court's PCA, we reiterate that the trial court should have done so. As previously stated (see footnote 1, supra), it appears that the Commission was derelict in failing to obtain a ruling from the trial court on its motion to dismiss the complaint based either upon the existence of an adequate remedy which the Sullivans had failed to exhaust, or upon the Sullivans' actual exhaustion of that remedy (albeit unsuccessfully), which culminated in this court's issuance of its PCA. More significantly, the Commission's failure to promptly apply to this court until after the trial court's final adjudication on the merits, effectively denied this court an opportunity to enforce the exhaustion requirement in a meaningful fashion. Compare Willis, supra, footnote 1, School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977), and Department of Revenue of Florida v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976), pointing to the availability of prohibition and interlocutory appeal to obtain early review of an order denying a motion to dismiss for failure to exhaust administrative remedies. Present Rule 9.100, Florida Rules of Appellate Procedure, suggests the use of certiorari, or in event an injunction has been issued against the agency by the trial court, Rule 9.130, providing for review of non-final orders. See, Smith v. Willis, 415 So.2d 1331 (Fla. 1st DCA 1982); Department of Business Regulation v. Carl and Mike, 425 So.2d 190 (Fla. 3rd DCA 1983), opinion filed January 18, 1983.
Of course, the mere fact that the litigation proceeded to final judgment would not alone deter us from strictly applying the exhaustion requirement to simply quash the trial court's decision, without reaching the merits. Florida Power Corporation v. Advance Mobile Homes Inc., 386 So.2d 897 (Fla. 5th DCA 1980). However, we will likewise not be deterred from reviewing the judgment on its merits if by doing so we may help to dispel the "atmosphere of uncertainty," Agner v. Smith, 167 So.2d 86 (Fla. 1st DCA 1967), which we may have contributed to by our denial of prohibition and affirmance of the appeal without explanation of our rulings. Here we may also justify our failure to strictly apply the exhaustion doctrine because the Commission has already asserted its position on the jurisdictional issues by denying dismissal of its investigation; and this court has previously taken a position on the same matters by affirming the Commission's denial. A reversal or quashal of the trial court's judgment without consideration of the final judgment on the merits, which basically deals with the same jurisdictional issues already treated by the Commission and this court, albeit not finally and definitively, would do little to further the aims of the exhaustion doctrine.[4] We therefore see no *934 impediment to our review of the judgment of the trial court, to the limited extent necessary to accomplish our stated purpose of clarifying our prior rulings. In so doing we do not presume to divine the reasoning employed by the previous panel of this court in arriving at its PCA decision. However, we can and do address the identical issue in the context of the present appeal.
Chapter 112, part III, is the legislatively mandated Code of Ethics for public officers and employees. Section 112.322, Duties and powers of commission, subsection (1) provides:
It is the duty of the Commission on Ethics to receive and investigate sworn complaints of violation of the code of ethics as established in this part, including investigation of all facts and parties materially related to the complaint at issue. (emphasis supplied)
The "code of ethics as established in this part" refers to Section 112.313, which establishes standards of conduct for public officers and employees of agencies. The operative question then becomes whether violations of Sections 99.012(7) and 116.111 may be determined to be violations of Section 112.313. We hold that they may be. Subsection 112.313(6) provides:
MISUSE OF PUBLIC POSITION.  No public officer or employee of an agency shall corruptly use or attempt to use his official position or any property or resource which may be within his trust, or perform his official duties, to secure a special privilege, benefit, or exemption for himself or others. This section shall not be construed to conflict with s. 104.31.
The prohibition against misuse of public office sweeps widely. Generically, it encompasses any misuse of office by a public officer or employee "to secure a special privilege, benefit, or exemption for himself or others." The prohibited misuse of public office might or might not be a violation of another statute. See, for example, DeBusk v. Smith, 390 So.2d 327 (Fla. 1980), where the complaint involved the corrupt use of a public office to secure a special privilege, benefit or exemption for another by causing the alteration and falsification of copies of public documents in violation of Section 112.313(4), Florida Statutes (Supp. 1974), the predecessor to Section 112.313(6), Florida Statutes (Supp. 1980). The complaints here allege that Wilma breached a public trust by violating the Anti-nepotism law (Section 116.111) in appointing, employing, promoting, or advancing son John in his position as Deputy Supervisor and that John breached a public trust by violating the resign-to-run law (Section 99.012(7)) in failing to take a leave of absence from his position as Deputy Supervisor after filing for the office of Supervisor of Elections. For the purposes of considering the Sullivans' earlier appeal of the interlocutory order denying their motions to dismiss for lack of jurisdiction, we were concerned only with the question of the Commission's jurisdiction to hear the complaints. Clearly, both complaints allege the use of a public office to secure a special privilege, benefit, or exemption for the officeholder or another, and, thus, the Commission has jurisdiction under Section 112.313(6).
Since we find a statutory basis for the Commission's exercise of jurisdiction in the particular matters before it, we are necessarily in disagreement with the decision of the learned trial judge in his application of a more restrictive reading of *935 Chapter 112, Florida Statutes. Our PCA was res judicata on the issue of the Commission jurisdiction to proceed with its investigation of the complaints before it. Having explicated a basis for our disposition of the only issue presented by the interlocutory appeal, and established it as res judicata on the dispositive issue in the present posture of the case, we decline the urging of the parties to engage in a wide ranging examination of hypothetical constitutional questions on the origin, status, and power of the Commission on Ethics, and return this controversy to the status that existed upon the issuance of our mandate on the Sullivans' appeal from the Commission's order denying their motion to dismiss.
The judgment of the circuit court is quashed. [See Appendix.]
LARRY G. SMITH and JOANOS, JJ., concur.
SHAW, LEANDER A., Jr., Associate Judge, specially concurs with written opinion.

APPENDIX

The section numbers of the Florida Statutes associated with John
and Wilma Sullivan were inadvertently reversed by the trial
court. Even though we disagree with a key conclusion reached by
the learned trial judge in his order, we reproduce the order in
full so as to preserve his thoughtful analysis of the issues
posed by the parties:
This cause came on for consideration before me on the Petitions
for Declaratory Judgment and other relief filed by Petitioners
Wilma Sullivan and John Sullivan (hereinafter Sullivans), and the
Court having reviewed the files, studied the memoranda filed by
respective counsel and being otherwise duly advised in the
premises, finds that it has jurisdiction over the parties and the
subject matter hereof.
Petitioners filed the instant proceedings seeking determination
of whether the Florida Commission on Ethics (hereinafter
Commission) possessed the power to investigate and hear
complaints alleging ethical violations or breaches of the public
trust when such alleged conduct is not within the ambit of Art.
II, Sec. 8 of the Constitution of the State of Florida and
Chapter 112, Florida Statutes. Thus, the extent of the
Commission's power is challenged and it is the responsibility of
this Court to so determine within the issues posed.
John Sullivan has been charged with the violation of Section
116.111, Florida Statutes. Wilma Sullivan has been charged with
the violation of Section 99.012(7), Florida Statutes. Pursuant to
a complaint submitted to it by Cliff Mason, the Commission has
undertaken an investigation to determine whether those alleged
violations constitute a breach of the public trust.
The propriety of the Sullivans' conduct is not before this Court.
The issue presented is whether the Commission has subject matter
jurisdiction over the complaints against the Sullivans. Posed
otherwise, the pivotal issue is whether the Commission has the
authority to investigate complaints alleging violations of
Chapters 99 and 116, Florida Statutes or whether its authority
extends only to investigation of complaints alleging violations
of Chapter 112, Florida Statutes, setting forth the code of
ethics for public employees, and Art. II, Sec. 8, Florida
Constitution, also setting forth standards of conduct for public
employees. The responsibility of the Sullivans to other organs of
government, and in what fashion and to what degree, is not an
issue before this Court.
The investigatory powers of the Commission pursuant to Chapter
112, Florida Statutes are clearly defined. Section 112.320,
Florida Statutes provides:
 There is created a Commission on Ethics, the purpose
 of which is to serve as guardian of the standards of
 conduct for the officers and employees of the state,
 and of a county, city, or other political subdivision
 of the state, as defined in this part. (emphasis
 supplied)
Thus, the statute creating the Commission limits the Commission's
purpose to guarding the standards of conduct for public employees
as those standards are defined in

*936
Chapter 112, Florida Statutes. Accordingly, the Commission lacks
authority under Chapter 112, Florida Statutes to investigate
complaints alleging conduct not proscribed in that Chapter. In
consequence, if the Commission is to have authority to
investigate complaints of violations of Chapters 99 and 116,
Florida Statutes, that authority must come from Art. II, Sec. 8
of the Florida Constitution, that being the only source of power
to the Commission other than Chapter 112.
Art. II, Sec. 8 of the Florida Constitution entitled "Ethics in
Government," provides standards of conduct for certain public
officials. The requirements of that Section include public
disclosure of financial interests, provisions for restitution to
the State of financial benefits obtained by using public office
for private gain, forfeiture of benefits under a public
retirement system for conviction of a felony involving a breach
of the public trust, and a prohibition against appearing before
government bodies by those who were previously a member of that
body. Art. II, Sec. 8(a) through (e). Art. II, Sec. 8(f)
continues:
 There shall be an independent commission to conduct
 investigations and make public reports on all
 complaints concerning breach of public trust by
 public officers or employees not within the
 jurisdiction of the judicial qualifications
 commission.
Art. II, Section 8(h)(3) further provides that until changed by
law, "the independent commission provided for in Subsection (f)
shall mean the Florida Commission on Ethics".
The Commission maintains that the language "independent
commission" means that it exists outside the recognized three
branches of government. Not so. Art. II, Sec. 3 of the
Constitution of the State of Florida provides that powers of the
State government shall be divided into legislative, executive and
judicial branches. Accordingly, the commission must be a member
of one of those three branches; which branch is not before this
Court. Even so, the Commission is entitled to exist independently
of any department or agency of its parent branch, but this Court
has no intention of serving as a midwife to the birth of a fourth
branch of government with an attendant labyrinthian maze of
bureaucracy.
The remaining question is what jurisdiction does Art. II, Sec. 8
of the Florida Constitution confer upon the Commission. The
language in Art. II, Sec. 8(f), creating an "independent
commission" to investigate "all complaints concerning breach of
the public trust", is ambiguous. The language is susceptible to
the interpretation that the Commission would have authority to
investigate complaints concerning breach of the public trust even
though such complaints were not filed with the Commission.
The constitutional provision does not on its face so limit the
investigative authority of the Commission and conceivably the
Commission could parallel grand jury proceedings and the
governor's suspension powers based on complaints filed elsewhere.
No party espouses the above, however, such could be the logical
extension of the Commission's argument.
The Commission does assert that it may investigate any complaint
presented to it if, in the judgment of the Commission, a breach
of the public trust is involved. This would necessarily leave the
Commission in the unfettered and elastic position of defining, as
and when it so desires, what conduct is a breach of the public
trust.
Another interpretation of the language in Art. II, Sec. 8(f) is
that "breach of the public trust" is limiting language referring
back to those activities described in Art. II, Sec. 8(a)-(e).
Under this construction, the Commission's powers would be
restricted to investigating complaints alleging conduct in
violation of Art. II, Sec. 8(a)-(e). Such is the construction
urged by the Sullivans.
In any event, it is apparent that the provision is susceptible of
varying interpretations.
It thus becomes necessary to decide what is meant in Art. II,
Sec. 8(f) by the phrase, "all complaints concerning a breach of
the public trust." To accomplish this, the intent

*937
of the framers and voters must be ascertained and the provision
interpreted in the way that will best fulfill that intent.
Williams vs. Smith, 360 So.2d 417 (Fla. 1978).
In Williams vs. Smith, supra, the Supreme Court of Florida,
construing a provision in Art. II, Sec. 8, looked to an address
to the joint session of the legislature on April 5, 1977 by
Governor Askew, the governor who caused Art. II, Sec. 8 to be
drafted and the petitions prepared. That address is again useful
as this Court attempts to ascertain the framer's intent. In his
address, Governor Askew said:
 "As we extend the sunshine amendment to other public
 officials and employees at every level of government,
 our goal should be to set meaningful and workable
 standards for financial disclosure and other
 requirements."
 * * * * * *
 "Another provision of the Sunshine Amendment that
 requires further implementation is the section
 prohibiting the appearance of certain elected
 officials before any board on which they served in
 the two years following their departure from the
 respective board." Fla.H.Jour., 17, 21, 22 (1977).
These statements indicate that the framers of Art. II, Sec. 8 did
contemplate legislative clarification of the language used in
Art. II, Sec. 8. Despite Governor Askew's plea, the implementing
legislative program failed of adoption and the constitutional
skeleton has yet to be fleshed out. In Florida Commission on
Ethics vs. Plante, 369 So.2d 332 (Fla. 1979) and Myers vs.
Hawkins, 362 So.2d 926 (Fla. 1978), The Florida Supreme Court
recognized that absent this legislative clarification, it is the
duty of the Commission to interpret and implement the sparse
language of Art. II, Sec. 8.
These comments by Governor Askew also reveal that the prime
concern of the framers was to implement the provisions of Art.
II, Sec. 8, not to address the ethical ramifications spanning all
960 chapters of the Florida Statutes and all provisions of the
Florida Constitution  or even as yet uncodified ethical values
held by the commission as it may from time to time be
constituted. This supports a limiting construction of Art. II,
Sec. 8(f); that "all complaints involving a breach of the public
trust" should be read to mean those complaints alleging conduct
in violation of the standards set forth in Art. II, Sec. 8, and
nowhere else. Indeed, all of the decisions presented to this
Court as authority deal with the Commission's power to construe
only the provisions of Art. II, Sec. 8; none go beyond that.
Plante vs. Florida Commission on Ethics, 354 So.2d 87 (Fla. 1st
DCA 1977), also supports this limiting interpretation of Art. II,
Sec. 8(f). In Plante the Court stated:
 It, therefore, follows that under Article II, Section
 8, Florida Constitution, generally known as the
 Sunshine Amendment, the Florida Commission on Ethics
 has the authority to conduct an investigation of
 complaints alleging a violation of Article II,
 Section 8, Florida Constitution... ." (emphasis
 supplied) Id. at 89.
Significantly, the Court inserted the Constitutional Article and
Section numbers in lieu of the language "violation of the public
trust."
While this language does not foreclose the possibility that the
Commission does have powers in addition to investigating
complaints alleging violations of Art. II, Sec. 8, it does
suggest that the power given to the Commission in Art. II, Sec.
8, is to investigate complaints alleging a violation of Art. II,
Sec. 8 and no more. Significantly, also, the Commission sought no
further appellate review of that decision.
A contrary interpretation of the language of Art. II, Sec. 8(f),
Florida Constitution, would allow the Commission unbridled power
to define virtually any conduct as a breach of the public trust,
subject only to equal protection and due process constraints.
There would be nothing to prevent the Commission from declaring
that failure of a public official to perform any specified act
constitutes a breach of the public trust. Surely this could not
have been the intent of the framers in drafting

*938
Art. II, Sec. 8. It is axiomatic that we are a government of
laws, not men. That principle remains valid and is indeed one of
the foundations of our liberty.
In consequence of the foregoing, it is the decision of this Court
that the Commission is limited to investigating complaints of
conduct which, in the opinion of the Commission, violates
provisions of Chapter 112, Florida Statutes or the provisions of
Art. II, Sec. 8, Florida Constitution. It necessarily follows
that the Commission has no authority to investigate complaints
alleging conduct which violates any other statute or
constitutional provision. Therefore, Rule 34-5.015 of the Florida
Commission on Ethics, purporting to expand jurisdiction of the
Commission over areas outside of Chapter 112, Florida Statutes or
Art. II, Sec. 8 of the Florida Constitution must be invalid.
It should be noted that this Court need not decide whether the
Commission has authority to promulgate rules clarifying the
provisions of Art. II, Sec. 8, although the Court observes that
no rulemaking power has been delegated to the Commission by
either the Constitution or Statutes. This Court does hold,
however that the Commission has no authority to promulgate rules
dealing with provisions outside of Art. II, Sec. 8, Florida
Constitution.
In consequence it is ORDERED AND ADJUDGED:
1. The Florida Commission on Ethics has no authority to
investigate complaints alleging conduct which may violate
provisions of Florida Statutes or the Constitution other than
Chapter 112, Florida Statutes and Article II, Section 8, Florida
Constitution.
2. The Commission lacks subject matter jurisdiction over the
complaints alleging conduct by John Sullivan in violation of
Section 116.111, Florida Statutes and by Wilma Sullivan in
violation of Section 99.012(7), Florida Statutes.
3. The foregoing being dispositive of the matter before me, no
ruling is made with respect to the other issues posed in the
petitions.
DONE AND ORDERED in Chambers at Tallahassee, Leon County, Florida
this 4th day of March, A.D. 1982.
 /s/ J. Lewis Hall, Jr.
 J. LEWIS HALL, JR.
 CIRCUIT JUDGE

SHAW, LEANDER J., Jr., Associate Judge, specially concurring.
Although I concur with the result and much of the reasoning in the majority's opinion, I do not agree that the Commission's motions to dismiss the Sullivans' complaints were apparently meritorious. On this point, for reasons set forth below, the majority's opinion is flawed by reliance on dicta from Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153, (Fla. 1982) (hereinafter Key Haven (Fla. 1982)). This reliance also fails to take into consideration the fact that the trial court could not have anticipated in 1981 that the traditional exceptions to the doctrine of exhaustion of administrative remedies would thereafter be limited to a single exception: facial unconstitutionality of a statute.[1]
*939 The question of when and under what circumstances a circuit court should intervene into the administrative process is an important one, and, from the viewpoint of the circuit court, no doubt a perplexing one. When the issue is clearly presented, as it is here, I believe this Court should address the issue and render its approval or disapproval of the circuit court action.
The Sullivans' suits for declaratory judgment posed numerous issues. Paraphrased, they were:
(1) whether article II, section 8, Florida Constitution, exempted Commission proceedings from chapter 120, Florida Statutes.
(2) whether subsection 8(f) authorized the Commission to adopt rules creating or defining breaches of the public trust beyond those enumerated in subsections 8(a)-(e).
(3) whether the adopted Commission rules were constitutional, both facially and as applied to the Sullivans.
(4) whether subsection 8(f) authorized the Commission to treat violations of sections 99.012 and 116.111, Florida Statutes, as breaches of the public trust.
(5) whether the Commission had jurisdiction over ex-public officers to hear complaints of breaches of the public trust committed by the ex-public officers before leaving office.
The Commission has consistently maintained that the answer to these questions is yes. In my view, the circuit court had the responsibility and wisely exercised its discretion to entertain the suits.
In analyzing the need for judicial intervention into the administrative process, I note and preserve the distinction between judicial intervention by the circuit court and judicial review by the district courts of appeal. The original jurisdiction of the circuit court to intervene by declaratory judgment "does not affect the jurisdiction of the district courts of appeal and this Court to review agency action pursuant to section 120.68, Florida Statutes (1975)." Department of Revenue v. Amrep Corp., 358 So.2d 1343, 1349 n. 5 (Fla. 1978) (my emphasis). There is no question that judicial review of final agency action lies in the district courts of appeal; a suit for declaratory judgment cannot be used to seek such review. See Rice v. Department of Health and Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980), where this Court noted that "the circumstances justifying circuit court intervention do not include the supposed incapacity of a district court of appeal to reach and decide a constitutional issue which has been carried unresolved to that part of the judicial system through the regular processes of Chapter 120. See Department of Revenue v. Amrep Corp., 358 So.2d 1343, 1349 fn. 5 (Fla. 1978)." Rice at 849.
If chapter 86 and section 120.73 are given their plain meaning, there can be no doubt that the Sullivans, or any other similarly situated persons, have the right to obtain a declaratory judgment under the circumstances here. Section 86.021 provides that "[a]ny person ... whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, ... may have determined any question of construction or validity arising under such statute, regulation ... and obtain a declaration of rights, status or other equitable or legal relations thereunder. Further, section 86.111 provides that the "existence of another adequate remedy does not preclude a judgment for declaratory relief." Finally, as noted in Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla. 1978), section 120.73 itself provides that nothing in chapter 120 "shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing or to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86." (my emphasis). On their face, these provisions grant a statutory right to a declaratory judgment on the questions raised by the Sullivans and negate the need to exhaust *940 administrative remedies. Section 120.73, in particular, seems to envisage a procedure whereby the circuit courts through declaratory judgments act as ombudsmen for citizens aggrieved by potential or ongoing agency action. Section 120.73 and chapter 86 can be read as a legislative vote of confidence in the judgment and discretion of the circuit courts, as the courts of general jurisdiction closest to the citizens, to balance the conflicting rights of the citizens against the imperatives of a smoothly functioning administrative process. Admittedly, such a policy may be unwise; it could lead to promiscuous judicial intervention and frustration of the administrative process. However, it is well established that the wisdom of legislation does not furnish grounds for judicial challenge of the legislation, and there is no question that the legislature has the constitutional power to grant such remedies and to assign the concomitant jurisdictional power to the circuit courts. Nevertheless, under the rubrics of primary jurisdiction, deference to the executive branch, and exhaustion of administrative remedies, a judicial policy has evolved which significantly impacts upon these chapter 86 rights. In my view, this judicial policy as it has developed is fundamentally misconceived: it assumes that exhaustion of administrative remedies is a question of judicial policy, based primarily on deference to the executive branch; the courts appear to ignore the fact that administrative agencies and remedies are created by the legislature and, as the United States Supreme Court put it, "the initial question whether exhaustion is required should be answered by reference to the congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent.[4]" [footnote omitted] Patsy v. Board of Regents of the State of Florida, ___ U.S. ___, ___, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982). The court further noted that "policy considerations alone cannot justify judicially imposed exhaustion unless exhaustion is consistent with congressional intent." Id. 102 S.Ct. at 2566. I have misgivings about the power of the judiciary to limit statutorily-granted remedies, or the wisdom of doing so, assuming we have the power. Nevertheless, it is this body of controlling case law and the judicial policy underlying it that must be examined.
The basic characteristic of the administrative process which most often justifies judicial intervention short of exhaustion of the administrative process, is the incapacity of the administrative process to address constitutional issues. This administrative infirmity and the constitutional duty of the courts to decide constitutional issues have long been recognized as a justification for judicial intervention without exhaustion of administrative remedies if judicial review of final agency action does not provide an adequate remedy. See Gulf Pines; Smith v. Willis, 415 So.2d 1331 (Fla. 1st DCA 1982); E.T. Legg and Co. v. Franza, 383 So.2d 962 (Fla. 4th DCA 1980); Carrollwood State Bank v. Lewis, 362 So.2d 110 (Fla. 1st DCA 1978); School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977); State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977); Department of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976); and State Department of Administration, Division of Personnel v. State Department of Administration, Division of Administrative Hearings, 326 So.2d 187 (Fla. 1st DCA 1976).
Although the presence of a constitutional issue may be the most common occasion for judicial intervention, nothing in sections 120.68 and 120.73 or chapter 86 suggests that judicial intervention is limited to cases presenting constitutional issues. Section 120.68(1) provides for immediate review by the district courts of appeal of preliminary, procedural or intermediate agency action if review of final agency decision would not provide an adequate remedy. See Communities Financial Corp. v. Florida Department of Environmental Regulation, 416 So.2d 813 (Fla. 1st DCA 1982), Mitchell, and State ex rel. Department of General Services v. Willis, which recognize the appropriateness of circuit court intervention when agency action is so egregious or devastating *941 that administrative remedies are too little or too late. Of similar import is the emphasis placed by Gulf Pines on the adequacy of the administrative remedy as the test of whether circuit court intervention is appropriate and the recognition that it is pointless to exhaust administrative remedies when only an untimely remedy is afforded.
The Sullivans' complaints posed numerous constitutional issues. Although we obviate these constitutional questions on appeal, the trial judge was presented with a plethora of constitutional issues for which exhaustion of administrative remedies and appeal of final agency action were inadequate. These issues did not arise merely because the Sullivans asserted them; they were bona fide. The Commission maintained then and now that it has direct constitutional authority under article II, section 8 to hear complaints of alleged wrong doings beyond those enumerated in section 8 and chapter 112, part III and that this authority was independent of legislative control. Assuming that the Sullivans were correct in their position that the Commission was proceeding ultra vires and without jurisdiction, it would not only have been "pointless to require ... [the Sullivans] to endure the time and expense of full administrative proceedings[,]" as Gulf Pines described it at 699; but judicial review of final agency action would not have remedied the possible irreparable injury to their public reputations caused by an exhausted, but ultra vires, administrative proceeding. In this latter respect, this case presents an additional factor warranting circuit court intervention beyond that present in Gulf Pines. Thus, in my view, there was no error in initially entertaining the Sullivans' suits in May, 1981; the error was in proceeding to judgment on the very jurisdictional issue decided by this Court in November, 1981.
A recent decision of the Florida Supreme Court, Key Haven (Fla. 1982), requires examination to ensure there is no conflict with the above. In Key Haven (Fla. 1982), Key Haven petitioned for a dredge and fill permit from the Department of Environmental Regulations (DER). A hearing officer recommended denial of the permit and DER entered an order denying the permit. Although Key Haven had the right under section 253.76, Florida Statutes (1975), to appeal the denial of the permit to the Board of Trustees of the Internal Improvement Fund (IIF) and thence to this Court, it chose to abandon its cause of action for a permit. Instead, Key Haven went to circuit court with a cause of action for inverse condemnation. The circuit court treated the inverse condemnation action as a collateral attack on DER's denial of the dredge and fill permit and dismissed the action for failure to exhaust administrative remedies. This Court adopted the reasoning of the circuit court and affirmed, holding that "Chapter 120 remedies plainly were adequate, and the circuit court correctly declined `to employ an extraordinary remedy to assist a litigant who has foregone an ordinary one which would have served adequately.'" Key Haven Associated Enterprises, Inc. v. Board of Trustees, 400 So.2d 66, 74 (Fla. 1st DCA 1981). On review, the Supreme Court affirmed the dismissal but disagreed, in pertinent part, with the reasoning of this Court. The Supreme Court's analysis was essentially that there were two separate causes of action involved. The first for a dredge and fill permit could only be appealed to the IIF and then by direct review to this Court. The second cause of action for inverse condemnation could have properly been brought in circuit court had Key Haven pursued an appeal to the ultimate state executive authority, the IIF, as it was required to do under section 253.76. In effect, the court's holding was that the second cause of action never accrued and was properly dismissed, because Key Haven failed to obtain the authoritative denial of its permit necessary for an inverse condemnation suit.
There is no suggestion in Key Haven (Fla. 1982) that the agency action in denying the permit presented any constitutional issues or that the exhaustion of administrative remedies and judicial review would have furnished an inadequate remedy. On the contrary: "Key Haven did not allege in *942 the circuit court that any statute relied upon by DER in denying its dredge-and-fill permit was facially unconstitutional, nor did Key Haven assert that the agency action was improper because of a constitutional violation inherent in the agency's decision making process." Id. at 158. Nevertheless, despite the absence of a relevant issue, the court went on to discuss what it saw as the three types of constitutional challenges that could be raised in the context of the administrative decision-making process. If the discussion was intended to establish controlling law, it was contrary to the maxim of judicial review enunciated by Justice Terrell in State v. Du Bose, 99 Fla. 812, 128 So. 4, 6 (Fla. 1930), that courts "consistently decline to settle questions beyond the necessities of the immediate case. This court [Florida Supreme Court] is committed to the `method of a gradual approach to the general, by a systematically guarded application and extension of constitutional principles to particular cases as they arise, rather than by out of hand attempts to establish general rules to which future cases must be fitted.'"
Key Haven (Fla. 1982) does not appear to be an appropriate case to address, or recede from, a long line of cases which has tested circuit court intervention into the administrative process against the presence of constitutional issues and the adequacy of administrative remedies. Nor does the court state that it is receding from this line of cases. Because this discussion is not essential to the decision in Key Haven (Fla. 1982), I consider it to be obiter dicta which does not provide controlling judicial precedent. Myers v. Atlantic Coast Line Railroad Co., 112 So.2d 263 (Fla. 1959); State v. Florida State Improvement Commission, 60 So.2d 747 (Fla. 1952); Pell v. State, 97 Fla. 650, 122 So. 110 (Fla. 1929); Ex parte Amos, 112 So. 289 (Fla. 1927) (J. Whitfield concurring opinion at 294), and Ard v. Ard, 395 So.2d 586 (Fla. 1st DCA 1981). Even so, dicta of the highest court should be given persuasive weight by lower courts unless it is contrary to previous decisions of the highest court. Horton v. Unigard Insurance Co., 355 So.2d 154 (Fla. 4th DCA 1978), O'Sullivan v. City of Deerfield Beach, 232 So.2d 33 (Fla. 4th DCA 1970), and Milligan v. State, 177 So.2d 75 (Fla. 2d DCA 1965). Accordingly, Key Haven (Fla. 1982), requires examination to determine if it contradicts previous holdings of the Supreme Court.
Key Haven (Fla. 1982) discusses three types of constitutional challenges to the administrative process: (1) Facial Unconstitutionality of a Statute; (2) Facial Unconstitutionality of an Agency Rule; and (3) Unconstitutional Application of a Statute or Agency Rule. Of these, the Court states that an aggrieved party may challenge only the first in circuit court; the latter two may only be challenged after exhaustion of administrative remedies by direct review in the district court of appeal. Gulf Pines clearly recognizes the availability of circuit court intervention when a bona fide challenge is presented to the facial unconstitutionality of a statute. However, in stating this proposition, Key Haven (Fla. 1982), states that "this type of constitutional issue could not, absent recourse to the circuit courts, be addressed until the administrative process is concluded and the claim is before a district court of appeal on direct review of the agency action." Id. at 157 (my emphasis). The emphasized statement does not recognize the alternative of an interlocutory appeal to the district courts of appeal under section 120.68(1). See, for example, State Department of Administration, Division of Administrative Hearings, where this Court intervened to resolve a constitutional challenge to the application of an agency rule. A district court of appeal is well suited to address the issue of the facial unconstitutionality of a statute or rule, since such challenges do not involve fact-finding. This potentially valuable alternative remedy should not be inadvertently abandoned.
Key Haven (Fla. 1982) states that a circuit court should not entertain a challenge to the facial unconstitutionality of an agency rule because an adequate remedy remains available in the administrative process. This is contrary to Gulf Pines at 699 and other case law which recognize the availability of circuit court intervention to enjoin *943 enforcement of facially unconstitutional agency rules. See for example, Carrollwood State Bank, Mitchell, State ex rel. Department of General Services v. Willis, and Young American Builders, all of which either uphold or recognize the availability of a circuit court challenge to an agency rule. Gulf Pines treats the facial constitutionality of rules and statutes interchangeably; logically so, since neither an agency nor a hearing officer can declare either a rule or a statute unconstitutional. Within the administrative process, a rule has the same legal effect as a statute; pragmatically, the facially unconstitutional provisions have the same impact on an aggrieved party whether embodied in a statute or a rule. The Key Haven (Fla. 1982) court cites Rice as an example of a court correctly declining to consider the facial constitutionality of an agency rule until administrative remedies were exhausted.[2] The reliance on Rice for *944 this proposition is factually incorrect: there was no agency rule in Rice to challenge; indeed, it was the very absence of an agency rule or order which this Court used as a rationale for refusing review until the agency had interpreted the statute in question. The pertinent proposition of law was that this Court would not consider the constitutional issue until it had been ripened by an agency rule or order.
Key Haven (Fla. 1982) also states that a circuit court should not entertain challenges to an agency's application of a facially constitutional statute or rule. No cases are cited for this proposition and research fails to find any so holding. This is also contrary to Gulf Pines where the improper retroactive application of a statute was held to justify circuit court intervention. The court held that the improper application of the statute resolved the litigation and obviated the challenge to the facial constitutionality of the statute. It is true that a challenge to the application of a statute or rule will place a greater burden on the petitioner to show that the administrative remedies are inadequate than when the challenge is the facial unconstitutionality of a statute or rule. Thus, intervention by the circuit courts on this type of challenge should be relatively rare. Nevertheless, Gulf Pines recognizes the right to challenge such improper application, particularly if the issue is the threshold question of whether the statute or rule is apposite to the proceeding. As the U.S. Supreme Court has put it, "before a man can be punished, the case must be plainly and unmistakably within the statute." U.S. v. Lacher, 134 U.S. 624, 628, 10 S.Ct. 625, 626, 33 L.Ed. 1080 (1890). This caveat is particularly pertinent here since the Commission asserts its authority to hear complaints of violations of any Florida Statute which, in the Commission's judgment, constitute a breach of the public trust. In my view, by ruling out entirely such challenges, Key Haven (Fla. 1982) contradicts Gulf Pines.[3]
I note finally that the three types of constitutional challenges to agency action discussed in Key Haven (Fla. 1982) are not inclusive in that they omit the type of challenge present here: agency interpretation and application of the constitution itself. The Sullivans' challenges to agency action involved in large part the Commission's interpretation of its own authority under article *945 II, section 8, Florida Constitution. Even if the discussion in Key Haven (Fla. 1982) is not dicta, it would not preclude the entertainment in circuit court of the issues posed here.
In summary, I believe that the circuit court correctly entertained jurisdiction of the Sullivan's complaints and that this court should forthrightly so hold without relying on a waiver or estoppel theory. Further, that the judicial policy and case law restricting access to the circuit courts under chapter 86 should be revisited and due emphasis placed on the controlling principle: legislative intent.
NOTES
[*] Replacing opinion filed January 7, 1983.
[1] The Commission's motion to dismiss the Sullivans' circuit court complaint did not inform the trial court of the Sullivans' appeal to this court raising basically the same jurisdictional issues included in the declaratory judgment suit. Furthermore, although the motion to dismiss did raise the issue of failure to exhaust administrative remedies, the Commission carefully avoided a concession that the Commission was subject to Chapter 120, having previously admitted in its answer the Sullivans' allegation that the Commission had previously ruled that it was not subject to the provisions of the Administrative Procedure Act, Chapter 120, Florida Statutes. We note further that the record does not show that a hearing was scheduled or held before the trial judge for argument of the motion to dismiss, and no order denying the motion was ever entered. However, the issue of the effect of this court's ruling on the Sullivans' appeal was presented to the trial court as one of the stipulated issues for consideration on final hearing, along with the issues on the merits of the case. At this point the trial court should have declined further adjudication in the case in deference, if for no other reason, to the authority of the appellate court.
[2] The trial court can hardly be faulted for viewing the Sullivans' predicament in the same light, since at the time suit was filed in the circuit court the Sullivans had not yet perfected their appeal to this court, and it was still some six months later that our mandate was issued in the administrative appeal.
[3] Our conclusion as to the res judicata effect of our PCA is not intended to suggest that the Commission, on remand, could not determine after further consideration that the particular acts which the Sullivans may be found to have committed do not constitute violations or offenses cognizable by the Commission under its own interpretation of its constitutional and statutory authority. On the other hand, our PCA would indicate that at the particular point in the administrative proceedings at which the Commission denied the Sullivans' motion to dismiss, the Commission's interpretation of its own jurisdiction as authorizing the inquiry it had embarked upon was a permissible one.
[4] The doctrine serves, "to support the integrity of the administrative process and to allow the executive branch to carry out its responsibilities as a co-equal branch of government." Key Haven, 427 So.2d 153, 157 (Fla. 1982). Review of the record before us leads us to conclude that the Commission itself actively pursued its own interests in the trial court litigation by seeking a ruling that with respect to its exercise of constitutional powers, it was not subject to Chapter 120. A fair inference may be drawn that the Commission attempted to use the circuit court litigation to further its own aims, fully aware that if it failed to prevail on its contention that Chapter 120 was inapplicable it could then assert the provisions of that Chapter, specifically Section 120.68(1), to overcome any adverse ruling by the trial court. Had the Commission acted more expeditiously to halt the circuit court litigation, in recognition of the fact that the judicial resources of the state (like other governmental resources) cannot be considered an unrationed commodity, it is likely that a great deal of the delay, duplication of effort, and cost to the parties might have been substantially reduced. Thus, while the exhaustion doctrine serves valuable interests which must not be overlooked, the timing of its attempted enforcement in this court may well implicate other important interests, such as the need for resolution of basic legal issues and an explanation of the reasons for such resolution.
[1] To appreciate Key Haven's (Fla. 1982) major constriction in the traditional exceptions to the exhaustion doctrine, contrast it with the discussion of the doctrine and exceptions thereto contained in Patsy v. Florida International University, 634 F.2d 900 (5th Cir.1981), reversed on other grounds, ___ U.S. ___, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The Fifth Circuit recognized four exceptions: first, where the remedy is plainly inadequate because no remedy is available, or the remedy is incommensurate with the claim, or the remedy is so untimely as to create a serious risk of irreparable injury; second, where the challenge is to the constitutionality of a statute and the administrative remedy will not obviate the constitutional question; third, where the question of the adequacy of the administrative remedy is pragmatically co-extensive with the merits as when the claim is that the administrative system itself is unlawful or unconstitutional in form or application; and fourth, where exhaustion of administrative remedies would be futile because it is clear the claim will be rejected. In reversing the Fifth Circuit, on other grounds, the Supreme Court added a fifth and pre-eminent exception which is particularly pertinent here: exhaustion is not required when the legislature did not intend that exhaustion be required.
[2] Both Key Haven (Fla. 1982) and Key Haven (Fla. 1st DCA 1981) cite Rice as an example of the efficacy of the exhaustion of administrative remedies principle. This perception does not stand up under close examination. In Rice, based on its reading of section 382.16(5)(a), HRS repeatedly refused to issue a birth certificate either in the maternal name (Rice) or the hyphenated maternal-paternal name (Rice-Stitt). On appeal, although no party contested the finality of agency action, we found the refusal to be non-final free-form action and remanded so that HRS could interpret the statutes and "examine factually the nature and extent of the State's interest in organizing and preserving information concerning births and family relationships under the father's surname, as distinguished from the mother's surname, or the hyphenated surnames of both parents" (my emphasis) Id. at 850.

On remand, a hearing officer recommended, and HRS ordered, that petitioners be permitted to obtain an amended birth certificate in their hyphenated names. 3 FALR 314-A. Presumably, this action granting petitioners their alternative choice sufficiently satisfied petitioners because they did not, or could not in the posture of the case, appeal. If one looks on a district court of appeal as an intermediate court of appeal for the correction of error, the remand accomplished its purpose. If one's vision of the court is that of a court of final appeal rendering dispositive law on core issues presented by the case which either forecloses or controls potential future disputes, the remand has numerous flaws:
(1) Although the hearing officer correctly recognized her lack of authority to deal with constitutional issues, the order consists in large part of an analysis of the constitutional issues presented and a conclusion that "[t]he state's interest in interpreting the statute so as to require the exclusive use of the paternal surname in order to preserve the goals of custom and administrative efficiency and economy is not sufficient to override the parents' personal and constitutional rights." Id. at 316-A. In retrospect, it seems clear that neither the agency nor the hearing officer could by statutory interpretation obviate the issue of the facial constitutionality of the statutory provision that "the surname of the child shall be entered on the certificate as that of the husband" and, consequently, it was "pointless to require applicants to endure the time and expense of full administrative proceedings ... before obtaining a judicial determination as to the validity of that statutory prerequisite." Gulf Pines at 699.
(2) the administrative order does not establish facts concerning, or even address, the root issue on which remand was based  whether the statute permits the use of the mother's surname alone on a birth certificate. Ironically, although the order does not note this, the state's avowed interest in reducing the length of the child's surname to facilitate computer processing would have been better served by permitting the use of the maternal name alone rather than the hyphenated names. Note also that the use of the maternal surname alone would not thwart the state's legitimate interest in identifying the father for purposes of enforcing paternal responsibility for the child since other unchallenged provisions of the statute require separate identification of the father on the certificate.
(3) Despite the extensive judicial and administrative labor and time expended, the legal effect of the order is the issuance of a single hyphenated birth certificate. It does not control future agency action nor does it furnish controlling case law on which courts, agencies, or parents might rely. Indeed, inasmuch as parents, medical personnel and medical institutions who submit applications for birth certificates are unlikely to be familiar with FALR, the practical impact of the order on the custom or practice of issuing certificates in the husband/father's name is probably negligible.
(4) The order does not place the imprimatur on the statute which a judicial interpretation could have provided. Consequently, unglossed, the statute continues to present an issue of facial unconstitutionality likely to result in future challenges and the expenditure of additional judicial and administrative labor. Predictably, See Sydney, et al v. Pingree, et al, Case No. 82-8291-CIV-JAG, order issued 17 December 1982 (D.C.S.D.Fla. 1982) where the court declared section 382.16(5)(a) to be an unconstitutional denial of the parent's due process rights of liberty and privacy to choose the name of their child. See also, Jech v. Burch, 466 F. Supp. 714 (D.C.Hawaii 1979) cited and argued in Judge Booth's dissent in Rice. Unlike the administrative process, Florida circuit and appellate courts are capable of disposing of constitutional issues and are responsible for protecting the constitutional rights of Florida citizens. The wiser judicial policy is to permit and require the courts to do so and not thrust this responsibility onto the administrative process or the federal courts through an overzealous emphasis on the principle of exhaustion of administrative remedies. Further, the Sydney case may signify a recognition by petitioners/plaintiffs, and a precedent establishing, that federal courts offer a more hospitable forum than state courts for the litigation of constitutional issues raised by the administrative process. If such federal forum shopping is encouraged, it bodes ill for the public and self-esteem of the state courts and the efficiency of state administrative processes. See, for example, the Orlando Sentinel of 14 July 1982 on the Sydney case, "Child `crawling around' nameless as parents fight Florida law."
[3] It should be noted that the administrative process involves state action. Even if the bright line distinctions drawn by Key Haven (Fla. 1982) are controlling in Florida courts, they cannot shield the Florida administrative process from judicial intervention by federal courts when federal constitutional issues are raised. The fourteenth amendment and Title 42, United States Code, section 1983 apply to both facially unconstitutional statutes or rules and to the unconstitutional application of facially constitutional statutes or rules. As footnote one indicates, federal courts follow a rule of judicial intervention similar to that enunciated in Gulf Pines, broadly based on the inadequacy (ineffective or untimely) or pointlessness of the administrative remedy. Thus, pragmatically, when federal constitutional issues are raised, our choice is not between judicial intervention or non-intervention, but between providing an adequate state judicial remedy or federal court intervention. The absence of an adequate state remedy can only increase unnecessary federal court intervention. The Key Haven (Fla. 1982) bright line simplifies circuit and appellate court decision-making but does not address the problem of inadequate state remedies when the facial constitutionality of a statute is not raised but the administrative remedy is nevertheless inadequate or pointless.